In the Matter of the Application of WILLIAM B. HERLANDS, as Commissioner of the Department of Investigation of the City of New York; and Others, Petitioners, to Vacate, Quash or Modify Certain Subpœnas Dated May 10, 1939, etc., against ABNER C. SURPLESS and Others, Respondents.

Supreme Court, Special Term, New York County, July 7, 1939.

*William C. Chanler, Corporation Counsel [Oren Clive Herwitz* of counsel], for the petitioners.

*Richard J. Barry [Harold W. Wolfram* on the brief], for the respondents.

ROSENMAN, J.   On or about November 4, 1938, the mayor of the city of New York, pursuant to the provisions of section 803 of the New York City Charter, directed William B. Herlands, commissioner of investigation of the city of New York, to make a complete investigation of the department of welfare of the city of New York and of the administration of unemployment relief by that department.

Section 803 of the New York City Charter provides as follows:

" Powers and duties

" § 803. The commissioner:

" 1. Shall make any investigation directed by the mayor or the council.

" 2. Is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

Pursuant to such direction, the commissioner of investigation and a large staff under his supervision have been conducting an extensive study and investigation.   The commissioner of investigation states that " the scope of the inquiry directed to be made by the Mayor is so broad that its completion can not be expected prior to the early fall of 1939."

On June 14, 1938, a resolution had been passed by the council of the city of New York pursuant to section 43 of the Charter of the City of New York appointing a special committee of seven members of the council and directing it to inquire into substantially the same subject as that which the mayor later directed the commissioner of investigation to investigate.

On May 11, 1939, a *subpœna duces tecum,* signed by a justice of this court on the petition of the chairman of the committee of the council of the city of New York, was served upon the commissioner of investigation.   It was directed to William B. Herlands, commissioner of investigation, and required him to appear before the committee on the 15th day of May, 1939, at the councilmanic committee hearing room, and to bring with him the following:
" All reports, recommendations, communications, or copies thereof, from your assistants to you, or to the Mayor of the City of New York, or from you to the said Mayor, or any other person, agency, department, board or commission, either private or public, or from

such entities to you or to the said Mayor or your assistants in relation to any investigation conducted by you or under your super·vision into the administration of Public Welfare in the City of New York, and any originals or copies of any records, books or papers of the Department of Welfare which you have in your control, as well as any and all other books, evidences and writings which you have in your custody, possession or control concerning the above investigation."

At the same time a subpœna was also served upon Adelaide Kelby, an examiner of accounts in the department of investigation, who had been exclusively assigned to such investigation since its beginning. The subpœna required Adelaide Kelby to appear at the same time and place to testify and give evidence.

Section 43 of the New York City Charter, pursuant to which the city council's investigation of the administration of relief is being carried on, reads as follows:

" Power of investigation

" § 43. The council shall have power from time to time to appoint a special committee to investigate any matters relating to the property, affairs or government of the city or of any county within the city. Any such committee shall have power to require the attendance and examine and take the testimony under oath of such persons as it may deem necessary.

This is a motion to vacate both subpœnas. The basis of the motion is the contention by the commissioner of investigation that the subpœna would require him to produce all of his working papers, records and other data which have been accumulated by his department during the inquiry; that the disclosure at this time of the information gathered by him would result in closing avenues of information now being followed in the investigation, would extensively hamper the investigation in the future and would destroy a substantial part of the usefulness of the information and material already obtained.

The committee of the council has appeared specially by its counsel, contesting the jurisdiction of the court on the ground that it has no power to interfere with the action of the council, which is the legislative branch of the city government. It also opposes the granting of this motion upon the merits.

By stipulation, its opposition on the merits does not waive its objection to the jurisdiction of the court.

With respect to the jurisdictional question it must be borne in mind, in the first place, that the council of the city of New York is merely a local legislative body and not a branch of State government co-ordinate with the State judiciary. It was created by a

charter formulated and adopted pursuant to a statute (Laws of 1934, chap. 867) enacted by the Legislature. Subject to the provisions of article 9 of the Constitution the charter may be amended by the Legislature; and even the subpœna power of the council might conceivably be taken away. The council is not in the same relative position with the State judicial branch of government as is the Legislature of the State of New York, which is the legislative voice of the People of the State. If the subpœnas of the council are immune from judicial review by the Supreme Court, then the authorized subpœnas of any legislative body of the smallest village or town would be similarly immune. The rights of individuals cannot be deprived of judicial protection if some legislative body of some local village or town or city sees fit to jeopardize them, on the theory that the judiciary may not interfere with the legislative function.

Whether the councilmanic committee applies to a court for a subpœna as it did in the case at bar, or whether it issues a subpœna on its own authority pursuant to section 43 of the New York City Charter or section 406 of the Civil Practice Act, it must eventually apply to this court for an order if it wishes to enforce the subpœna by contempt proceedings against a recalcitrant witness. (Civ. Prac. Act, § 406; Gen. City Law, § 8.) Since the Supreme Court has the jurisdiction necessary to enforce the subpœna, it must have jurisdiction to vacate it. (*Matter of Foster*, 139 App. Div. 769.) There the court said (p. 779): " In view of the fact that if a subpœna is ever to become effective, it is by virtue of the provisions of the Code of Civil Procedure, which contemplated a judicial proceeding to punish for contempt if it was disobeyed, we think that a party whose rights are invaded by such process may apply to the court, whose duty it is to enforce it, to set aside such process if it is invalid."

Furthermore, even if the subpœna of the local council were to be accorded the same dignity and effectiveness as a subpœna of a committee of the State Legislature itself, there is nothing in principle or in authority to prevent the Supreme Court from passing upon the subpœna's validity in a judicial proceeding properly instituted for such purpose.

In *People ex rel. Hastings* v. *Hofstadter* (258 N. Y. 425) the Court of Appeals, which had before it a motion to vacate a subpœna of a joint committee of the Legislature of the State of New York (not merely of a local legislative body), assumed that the courts had jurisdiction to pass upon the question and did in fact proceed to consider at length the merits of the motion, although, by way of dictum (234 App. Div. 388, 389), the Appellate Division,

whose action it was reviewing, had cast doubt on the court's power. The court decided: (1) That the privilege against the subpœna there urged by a member of the Legislature did not exist; and (2) that the power of the legislative committee persisted even after the end of the legislative term during which it was created. Its jurisdiction to decide these questions was assumed by the Court of Appeals to exist, even though the Legislature, as distinguished from the local council, had the power itself to enforce its own subpœnas without the necessity of making an application to the courts. (Legislative Law, § 4, subd. 5; *People ex rel. Hastings* v. *Hofstadter, supra,* at p. 435.)

This motion is not an attack upon the conduct of the council as being merely unwise. It is an attack upon the very power of the council. Only the courts can determine the limits of that power; and the proper procedure to test that power is by a motion to vacate the subpœna. (*Carlisle* v. *Bennett,* 268 N. Y. 212.)

Although there may be language in the opinion of the court in *Hearst* v. *Black* (87 F. [2d] 68) which might be construed to be somewhat in conflict with the foregoing conclusion, the actual decision in that case is not. *First,* the Circuit Court of Appeals there had under consideration an act of the United States Senate and not of a local body. *Second,* its decision dealt only with the proposed use of certain documents already illegally in the possession of the Senate committee. It had not been called upon to prevent the seizure itself as in the case at bar. It was asked to direct the Senate committee with respect to the use which could be made of the material after it had actually acquired possession thereof, albeit illegally. Obviously such a direction would be an interference by the court with a co-ordinate branch of the government. If the court were passing upon the power of the Senate committee allegedly to invade the private rights of an individual whose documents it was about to seize, a situation would be presented more like the one now before this court. In fact the Circuit Court of Appeals specifically said (p. 71): " We are, therefore, of opinion that the court below was right in assuming jurisdiction as to the commission, and if the bill had been filed while the trespass was in process it would have been the duty of the lower court by order on the commission or the telegraph companies or the agents of the committee to enjoin the acts complained of."

My conclusion is that this court has jurisdiction, therefore, to entertain and decide this motion.

The power of the Legislature to investigate, to obtain facts, as a basis of legislation, has always been conceded to be implicit in the power to legislate.

In *Briggs* v. *Mackellar* (2 Abb. Pr. 30, 56) the court said:

" The right to pass laws necessarily implies the right to obtain information upon any matter which may become the subject of a law. * * * In American Legislatures the investigation of public matters before committees, preliminary to legislation, or with the view of advising the house appointing the committee, is, as a parliamentary usage, as well established as it is in England, and the right of either house to compel witnesses to appear and testify before its committees, and to punish for disobedience, has been frequently enforced " (pp. 56, 57).

" When the Constitution was framed and adopted * * * the power of inquiry — with enforcing process — was regarded and employed as a necessary and appropriate attribute of the power to legislate — indeed, was treated as inhering in it. * * * the constitutional provisions which commit the legislative function to the two houses are intended to include this attribute to the end that the function may be effectively exercised." *(McGrain* v. *Daugherty*, 273 U. S. 135, 175.) (See, also, *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, 478; *Sinclair* v. *United States*, 279 U. S. 263, 291; " The Legislative Investigating Committee," by Herwitz and Mulligan, 33 Col. Law Rev. 1.)

Therefore, section 43 of the charter merely reaffirms a principle which has always been one of the foundations upon which legislative processes have been based.

It is not necessary to determine whose power of investigation is superior — the power of the executive under section 803, or the power of the council under section 803 and section 43. Each must be allowed to continue along its own way pursuant to law.

Under the authority of section 803 the council also had the power to direct the commissioner of investigation to conduct an inquiry on its own behalf and require him to submit his report thereon to the council as provided in section 803–1.0 of the Administrative Code. During any such inquiry by the commissioner of investigation the council could naturally ask him to submit interim reports as to what had come to his attention. In effect, that is what the councilmanic committee is doing by means of the subpœna.

There is nothing in the statutes to limit the persons or material which the council might subpœna, providing only that their testimony or contents are relevant to the inquiry itself. It is unnecessary to consider how far the council might question, under subpœna, the chief executive officer of the city himself, with respect to confidential memoranda in his office. It is sufficient to point out that the commissioner of investigation is not in the same category any more than are any of the commissioners appointed by the mayor.

Could the police commissioner, for example, resist a subpœna of a duly constituted committee of the council investigating a police matter, on the ground that he himself was investigating the matter and that the subpœna would interfere with the efficacy of his own investigation?

Although it might have been advisable that immunity be given by the charter to the commissioner of investigation from the subpœna of the council, it was not so provided. On the contrary, the commissioner of investigation was expressly directed to make any investigation which the council itself might order and to make his report thereon directly to the council.

The power to issue the subpœna here under consideration resides in the council. It is not for the court to tell the council how that power should be exercised. It may be that the fears expressed by the commissioner of investigation that his inquiry will be hampered and partially frustrated are justified. This court, however, cannot and will not assume that the council will use its power to accomplish that end. The councilmanic committee can very easily and readily preserve the secrecy and integrity of the investigation being carried on by the commissioner. It must be assumed that the council, duly elected representatives of the people of the city, will do nothing to deprive the people of the benefits of a thorough and impartial inquiry into the administration of relief, for the council " is as much the guardian of the liberties and welfare of the people as the courts."

The caution uttered by the court in *Briggs* v. *Mackellar* (*supra*, at p. 61) that " The power inherent in them, as public bodies, is a public trust, to be exercised for the general benefit of the community for which they act," will, no doubt, be the guide for the end to be achieved.

The motion to vacate is, therefore, denied. In view of the importance of the matter, however, the order to be entered herein may provide for a stay until such time as the petitioners can, with due diligence, apply to the Appellate Division for a stay pending appeal to that court. Settle order.