In the Matter of WILLIAM J. WITHROW and Others, Petitioners, against THE JOINT LEGISLATIVE COMMITTEE TO INVESTIGATE THE EDUCATIONAL SYSTEM OF THE STATE OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, June 5, 1941.

*Mulligan & Hill,* for the petitioners.

*Paul Windels* [*Phillip W. Haberman* of counsel], for the respondent.

ROSENMAN, J. The first question raised is the power of this court to pass upon a motion to vacate a personal subpœna issued by a joint legislative committee of the Legislature of the State of New York. I conclude that this court has such power.

In the case of *People ex rel. Hastings* v. *Hofstadter* (258 N. Y. 425) the Court of Appeals had before it a motion made by a prospective witness to vacate a subpœna of a joint legislative committee of the Legislature of the State of New York. There was also before it, at the same time, a motion by the committee to adjudge the same witness in contempt for refusing to appear in response to the subpœna.

The Court of Appeals assumed that the courts had jurisdiction to pass upon both motions, and did in fact proceed to consider at length the merits of the motions. It is true that the question of power was apparently not specifically and expressly raised. But the Appellate Division below, whose order was before the Court of Appeals, had intimated, in a dictum, that the court might not have such power. It stated (234 App. Div. 389), " We are informed of no equity jurisdiction existing in the Supreme Court to undertake in a summary proceeding to set aside the service of a subpœna issued by a legislative committee." It seems clear that when the Court of Appeals, in spite of this statement, proceeded to assume jurisdiction, it very clearly laid down the rule that such jurisdiction exists.

The decision in the case of *Hearst* v. *Black* (87 F. [2d] 68) is not in conflict with the foregoing conclusion. The decision dealt only with the proposed use of certain documents which allegedly had been already illegally seized by a committee of the United States Senate. The court had not been called upon to prevent the seizure itself. On the contrary, it was petitioned to direct the Senate committee with respect to the use which could be made of the material by that committee after it had actually acquired possession thereof, although illegally. It is obvious that such a direction would clearly be an interference with a co-ordinate branch of the government. That was a different matter from the court passing upon the power of the Senate committee to seize the documents. In fact the Circuit Court of Appeals specifically said (p. 71): " We are, therefore, of opinion that the court below was right in assuming jurisdiction as to the commission, and if the bill had been filed while the trespass was in process it would have been the duty of the lower court by order on the commission or the

telegraph companies *or the agents of the committee* to enjoin the acts complained of." (Italics by this court.)

Furthermore, the Court of Appeals in *Matter of the Joint Legislative Committee to Investigate the Educational System of the State of New York* (285 N. Y. 1, 9), indicated that the courts had the power to pass upon the subpœnas of a joint legislative committee. The court there said: " In the present proceeding, as we have seen, we must assume that the legislative inquiry was well intended. If a subpœna is to be quashed in advance of a committee hearing, upon a forecast of the testimony sought and arguments as to its probable effect, the purpose of the inquiry may be thwarted. We cannot say as matter of law, upon the record at hand, that the subpœna now challenged would be futile as an aid to the legislative inquiry instituted by the Joint Resolution. It is only when futility of such process is inevitable or obvious that there must be ' a halt upon the threshold ' of the inquiry. (*Matter of Edge-Ho Holding Corp.*, 256 N. Y. 374, 382.) Proof of such futility is not in the record before us."

Obviously, if the court had no power to pass upon the validity of such subpœnas the Court of Appeals would not have discussed the question of the intentions of the legislative inquiry or the alleged futility of the subpœna.

If the courts did not have such power, the only way that the question could be raised by a citizen whose rights might be alleged to be in jeopardy by a subpœna, would be for him to hazard the results of a contempt proceeding, which, at least in the first instance, places such a citizen in the public position of impeding and obstructing the work of the committee. By making a motion to vacate the subpœna, however, the legal questions involved can be raised without assuming the position of declining to answer or declining to obey the subpœna in the first instance.

Other cases deciding, or at least assuming, that such power exists are *Matter of Gordon* (141 Misc. 635) [joint legislative committee]; *Carlisle* v. *Bennett* (268 N. Y. 212) [investigation by the Attorney-General]; *Matter of Herlands* (171 Misc. 914; affd., 258 App. Div. 275; affd., 282 N. Y. 647) [New York city council investigating committee].

In *Donnelly* v. *Roosevelt* (*Matter of Walker*) (144 Misc. 525) there was no question of a subpœna. There the very act of the Governor in carrying out his legal duty was involved. It was not merely the manner, but the very function, of executive action which was under attack.

Passing now to the merits of the motion before the court, the moving papers do not raise the question of the power of the com-

mittee to issue the subpœnas complained of. In fact, the power has been definitely settled by *Matter of the Joint Legislative Committee to Investigate the Educational System of the State of New York* (*supra*).

On the contrary, the motion is based upon the following allegations and claims:

(1) That a number of the teachers who testified were subsequently suspended from their positions without pay; (2) that the position of one of the teachers was declared vacated by reason of his refusal to sign a waiver of immunity before testifying; (3) that it allegedly appears that the purpose of the joint legislative committee is to destroy the New York Teachers Union Local 537 and the Teachers Union of the City of New York Local 5; (4) that the interim report of the joint legislative committee to the Legislature (N. Y. Leg. Doc. No 54, 1941, p. 71) was unfair and improper; (5) that the rules of procedure publicly announced by the committee at its first public hearing on December 2, 1940, have not been adhered to; (6) that the counsel for the teachers unions was not permitted properly to present his application to be permitted to cross-examine; and that he was physically assaulted and ejected from the hearing room by the order of the vice-chairman of the committee, with resulting injuries requiring hospitalization; (7) that on a later occasion the said counsel was by physical force restrained in his seat and not permitted to make an objection, and in fact again was physically assaulted; (8) that the right of cross-examination of accusers has been denied; (9) that accused teachers whose names had been printed in the public press have had to wait weeks or months before being given an opportunity to be heard in their own behalf; (10) that when such opportunity was finally afforded their time was strictly limited, although they were then subjected to extended cross-examination by counsel for the committee, the duration of which, in some instances, was many times the length of their own explanation; (11) that exhibits offered in evidence at public hearings have not been open to inspection of counsel for the teachers unions; (12) that the " tenure " of the teachers under the Education Law of the State of New York is in jeopardy because there is no assurance that when the teachers are accorded a hearing, they will be confronted with the same persons who have testified against them in the hearings of the joint committee; (13) that " public hysteria wantonly created by the joint legislative committee " will deprive the teachers of a fair and impartial trial before the board of higher education; (14) that any information which the joint legislative committee may seek from the witnesses whose subpœnas are involved in this proceeding

has already been given at private hearings, and that there is no need for any public hearing.

In short, the petitioners contend that the committee is no longer acting as a fact-finding body, but that it has " turned into an agency whose purpose appears to be the obtaining of victims through indictment, dismissal from positions, and suspension from duties without pay," and destroying the teachers unions.

In the further affidavit of William Mulligan, verified June 4, 1941, submitted after the argument, it is alleged further that the interim report of the committee was submitted to the Legislature before the accused teachers were given an opportunity to testify publicly in their own behalf. Quotations from the record are also therein set forth to indicate that the teachers were not given opportunity to make full or even fair statements in their own defense; and instances in the record are mentioned where such teachers were subjected to continual interruptions by members of the committee.

With the exception of items 1, 2 and 8 above enumerated, the charges made by the petitioners are vehemently denied by the associate counsel to the committee. Said counsel points out in his affidavit that the teachers unions have not been the objects of attack, but that they have figured prominently in the testimony only because a number of their officers and members have been shown to be communists and propagandists for communism among teachers and students; that three of the petitioners here — Moraia, Selsam and Klein — had refused to give testimony in private hearings, stating, however, that they would be glad to give testimony in public hearings which they are now resisting; that full opportunity was given to each teacher to make complete statements, to the point, at times, where order and decorum became impossible; that there was little or no cross-examination or interruption of the teachers, with one or two exceptions where additional evidence of material nature could be elicited; that the charges of brutality, physical assault, forcible restraint and ejection, made by counsel for the teachers unions, are all false, and that said counsel was obstreperous and unduly provocative, interfering with and interrupting the proceedings continually and repeatedly; that, with one necessary exception, all exhibits of the public hearings have been made available to the counsel for these petitioners.

The investigation which the legislative committee is now carrying out, through its duly appointed subcommittee, with respect to communist activities and associations of teachers in the public schools and colleges is very clearly and very properly in furtherance of one of its enumerated functions and duties, as specified by the

concurrent resolution of the Legislature of the State of New York. By such resolution it is directed to investigate among other things, " the extent to which, if any, subversive activities may have been permitted to be carried on in the schools and colleges of such [New York City] educational system."

If in fact subversive activities have been carried on in schools and colleges, it is essential to the preservation of our own democracy and civil liberties that these activities be disclosed, and that a full and speedy report be made thereon to the Legislature so that corrective and remedial legislation may be adopted. Nothing that the committee is charged to do, by the resolution creating it, is more important than ferreting out any subversive activities carried on by the Communist party or any members or associates thereof in our schools and colleges.

As to the charge above enumerated (1) that some of the teachers who did testify have been suspended, the counsel to the committee points out that the reason for such suspension has not been the fact of testifying, but the belief of the board of education and the board of higher education that the testimony was perjurious. Each of such teachers had been called to testify at his own request. Certainly the fact that disciplinary or penal proceedings may follow testimony deemed to be perjurious is no reason for interference with a legislative inquiry.

Nor can such inquiry be impeded by the court on the assumption that later disciplinary or penal proceedings might be unfairly conducted. There is no proper basis for such assumption here; but even if there were, the petitioners have proper judicial remedies with respect to such subsequent proceedings, which should be there exercised rather than attempted in this legislative inquiry.

Claim enumerated (2) above is conceded; but section 903 of the New York Charter requires such action when a public officer refuses to sign a waiver of immunity. This was not the act of the legislative committee; it was the result of a statute.

Claim enumerated (8) above is also conceded. But a witness has no legal right to counsel or to cross-examine his accusers in a legislative inquiry such as this.

It is not necessary for the court to pass on the other disputed questions of fact above enumerated. Even if they were true as alleged by the petitioners, they would not form the basis for interference by the courts. They have to do only with the procedure and methods of inquiry adopted by the committee. They do not prove the contentions made by the petitioners that this legislative committee has abandoned its fact-finding functions, or that " the professed object of the inquiry * * * is merely a cover and

a sham " (see *Matter of Edge-Ho Holding Corporation*, 256 N. Y. 374, 381); or that its real object and intention are different and ulterior, such as " the obtaining of victims through indictment, dismissal from positions, and suspension from duties without pay," or destroying the teachers unions.

Certainly there is no showing that the public testimony of these witnesses will be " futile," with respect to the effort to disclose the facts for presentation to the Legislature. The appearance of these witnesses at private hearings does not preclude their public appearance for the same testimony or for additional or more detailed testimony.

The procedure to be followed is solely within the discretion of the legislative committee itself, and there is no provision of law requiring cross-examination or representation by counsel or any particular order of testimony. It is not the function of the court to interfere with or attempt to regulate any such procedure; and, indeed, it is doubtful whether the court has any such power. That power rests only with the Legislature; and apparently the Legislature has approved the procedure, since it has extended the life of its committee without imitation upon the procedure already adopted by it.

If the petitioners herein are innocent of any charges of subversive activities, this is their public opportunity to disclaim them.

In this period of unlimited national emergency, every arm of the government must be especially vigilant in tracking down, by every constitutional and legal means, those in our midst who have taken advantage of their American liberties to engage in attempts to destroy those liberties. There should, on the other hand, be scrupulous determination to adhere to American principles of fair play in that enterprise — consistent only with the necessities of the public safety. The Legislature and its committees must be assumed to be aware of both of these necessities for, as stated by Justice HOLMES in *Missouri, Kansas & Texas Ry. Co. v. May* (194 U. S. 267, 270), " It must be remembered that Legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

The courts, therefore, even if they had the power, should not seek to lay down procedure for its co-ordinate branch of government — the Legislature.

The motion to vacate the subpœnas is denied and the petitioners are directed to comply with them forthwith.