OPINION OF THE COURT
Edward J. Greenfield, J.
In each of these proceedings, an order is sought quashing a subpoena issued by Harvey L. Strelzin, Chairman of the Assembly Standing Committee of Consumer Affairs and Protection. As all three proceedings raise substantially identical issues, the court will consider them together for purposes of disposition.
Each of the subpoenas states that it was issued in connection with an inquiry into: "all aspects of the operations of savings banks in New York State, their intended purpose and their obligations as thrift institutions, and the manner and degree to which their intended purpose and their obligations are being fulfilled.”[1]
In a cover letter accompanying the subpoena, respondent Strelzin states that he has been "authorized by the Honorable Stanley Steingut, Assembly Speaker, to determine * * * *550 whether the savings banks are adequately serving the people of the State of New York.”
It appears that the investigation resulted out of concern that savings banks were withholding funds to force the Legislature to act on bills to increase the interest rate ceiling on home mortgages; however, the motive of respondent and/or the Speaker is not the issue.
Petitioners seek to quash the subpoenas on the grounds, inter alia, that the committee has no jurisdiction or authority to conduct this investigation.
The contention that the committee lacks jurisdiction and authority is based primarily on the fact that there is no "resolution, statute, order or other provision of law specifically authorizing the investigation.” Section 73 of the Civil Rights Law provides in pertinent part that: "2. No person may be required to appear at a hearing or to testify at a hearing unless there has been personally served upon him prior to the time when he is required to appear, a copy of this section, and a general statement of the subject of the investigation. A copy of the resolution, statute, order or other provision of law authorizing the investigation shall be furnished by the agency upon request therefor by the person summoned.”[2] Respondent, although conceding that there is no resolution, order, statute or other provision of law specifically authorizing the inquiry, contended in response to requests pursuant to subdivision 2 of section 73, that the investigation is authorized by sections 60 and 62-a of the Legislative Law. In addition, in opposition to the motions to quash, various rules of the Assembly as well as custom and practice are relied on.
A resolution of the conflicting contentions involves an analysis of the power of the Legislature, the Speaker and committee chairmen. It is not disputed that inherent in the legislative process is the power to conduct investigations, which power encompasses inquiries concerning the administration of existing laws as well as proposed or possibly new statutes. However, the issue here is not whether the Legislature or another standing committee could conduct this inquiry, but *551 whether Strelzin’s committee is the one that has jurisdiction and authority.
The committee is one of 28 standing committees of the Assembly. Pursuant to section 1 of rule 4 of the Assembly Rules: "All standing committees shall operate on an annual basis and it shall be their duty to propose legislative action and to conduct such studies and investigations as may relate to matters within their jurisdiction.” (Emphasis added.)
The theory of a committee inquiry is that the committee members are serving as the representative of the parent Assembly in collecting information for a legislative purpose. (Watkins v United States, 354 US 178, 200.) But when only one or two men purport to act on behalf of the entire legislative body, it must be made plain that the power of the Legislature has been clearly delegated to them, and that they have been instructed as to how to exercise that power. (Watkins v United States, supra, p 201.)
Section 73 of the Civil Rights Law, which is entitled "Code of fair procedure for investigating agencies”, was enacted in 1954 (L 1954, ch 414, § 1) to deal with the excesses indulged in by investigating committees of that era. One of the practices which was then prevalent was the convening of a hearing by the chairman of a committee or subcommittee which issued subpoenas and conducted wide-ranging investigations as whim and the winds of publicity might dictate. Hence, subdivision 2 of the code of fair procedure specified that the investigating agency was required to serve a statement as to the subject of the investigation and "a copy of the resolution, statute, order or other provision of law authorizing the investigation”. Thus, the basis for an assertion of subpoena power is a demonstration not only of the relevance of the items sought, but also the basis for inquisitorial action and the grounds of authority. (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916.) The asserted authority for the proposed investigation of banking practice by the Committee of Consumer Affairs is sections 60 and 62-a of the Legislative Law and the statement that the investigation is in full conformity with the "rules and practice of the Assembly.”
Any judicial body must tread with care when seeking to ascertain the limits of legislative authority. While that authority is broad, it is not unlimited, and especially when the Legislature itself has circumscribed its own powers, the courts *552 must be alert to discern whether the invocation of power is within the law.
Section 73 requires that there be a resolution, statute, order or other provision of law for the investigation to go forward. It clearly is not enough for reliance to be placed upon "rules and practice”. Custom and practice, no matter of what standing, cannot be equated with "resolution, statute, order or other provison of law”. Resolutions, statutes and orders are explicit grants of authority which require no investigation or construction beyond the words themselves. Resolutions, statutes and provisions of law are grants of power expressly sanctioned by a majority of the Legislature. Executive orders and court orders are equally explicit in setting forth a grant of power to an agency. A reliance upon "custom and practice” relegates the forum in which the authority of the investigating committee is challenged to conflicting oral testimony based upon disparate recollections of what that custom or practice may have been. The Legislature quite clearly expressed itself as requiring, so far as legislative authority is concerned, a resolution, statute or provision of law which would clearly embody the consent of a majority of the Legislature, rather than the individual desire or predilections of a committee chairman or legislative leader.
An investigative "agency” is defined by section 73 (subd 1, par [a]) as a standing or select committee of either house of the Legislature or a joint committee of both houses, or a duly authorized subcommittee of any such legislative committee. The committee here involved, the Committee on Consumer Affairs and Protection, is one of the standing committees of the Assembly. It was established by Resolution No. 10 of 1975. While that resolution creates the committee, it does not define its jurisdiction or authority in particular areas of investigation. Respondent points out that the powers and duties of 24 of the 28 standing committees of the Assembly are not defined by any resolution. Respondent declares that it is the practice of the Assembly for the jurisdiction of a committee to be delineated by the chairman of that committee or by the Speaker, with any jurisdictional disputes being resolved by the Speaker. Those "practices” cannot be deemed to give the chairman of a standing committee the power to conduct an investigation into any matter he believes falls within the jurisdiction of his committee. The fact that the chairman may be authorized by the Speaker to conduct an investigation is *553 not in and of itself tantamount to a grant of jurisdiction. While, clearly, the Speaker has the power to refer any pending bill to a particular committee, there is no rule, resolution or provision of law which grants him the power to direct any committee to conduct a specific investigation.
Naturally, there have to be defined boundaries, or legislative committees could find themselves vying with one another to conduct investigations into areas of particular public interest. Orderly procedure should be devised to prevent the unseemly jostling by committees to be first into an area which has "political sex appeal”. It appears that up until this time, the Committee on Consumer Affairs and Protection has not exercised any jurisdiction in the area dealing with banks and the increase in the ceiling of mortgage interest rates. In fact, it appears that all bills relating to that subject have been referred to the Banking Committee, which would traditionally hold hearings with respect to matters directly affecting banks, and upon whom jurisdiction over bills relating to mortgage interest ceilings had been referred by the Speaker. It is interesting to note that in its 1977 annual report, the committee on Consumer Affairs and Protection stated that it dealt with consumer-related legislation within the purview of the Agriculture and Markets Law, Education Law, Executive Law, General Business Law, General Obligations Law, Personal Property Law, Public Health Law and the Uniform Commercial Code. The New York Banking Law is nowhere mentioned. While it is to be anticipated that standing committees to whom particular bills have been referred would have the power to hold hearings with respect to those bills, it is unusual to find a committee which is not passing on such a bill asserting the right to conduct its own individual investigations in that field. It would appear that reference of a bill to a particular standing committee would pre-empt parallel action by other committees.
Sections 60 and 62-a of the New York Legislative Law, relied on by respondent as authority for the issuance of the subpoenas, state in pertinent part:
"§ 60. Testimony before legislative committees.
"A legislative committee may require the attendance of witnesses in this state whom the committee may wish to examine.
"§ 62-a. Subpoenas; oaths.
"The chairman, vice-chairman or a majority of a legislative *554 committee may issue a subpoena requiring a person to attend before the committee and be examined in reference to any matter within the scope of the inquiry or investigation being conducted by the committee, and, in a proper case, to bring with him, a book or paper.” These sections clearly do not constitute a grant of jurisdiction upon a legislative committee to conduct such investigations as they may choose to pursue. Rather, these statutes presuppose a lawful grant of authority and jurisdiction to the committee conducting a particular investigation.
Similarly, respondent’s reliance on rule 4 (3-b) which provides:
"that during each legislative session, chairman of standing committees may call public hearings to permit interested persons, groups or organizations the opportunity to testify orally or in writing on legislation or other matters pending before such standing committee provided, however, that each chairman shall call such public hearings upon a petition signed by a majority of the members of the committee
"b. other public hearings may be called by committee chairmen with prior consent of the Speaker and in accordance with procedure established by law” (emphasis added) is misplaced. The rule does not define the areas in which hearings may be called, but again presupposes that there is a matter pending before the committee within its jurisdiction.
As the resolution establishing the committee neither gives it the authority to conduct investigations in any area which may effect consumers nor defines the scope of its jurisdiction the court, although loathe to interfere in the workings of a coordinate branch of the government, finds that in the absence of a resolution of the Assembly specifically authorizing the investigation and in the absence of any bill before the committee relating to savings banks which would serve as a basis for this inquiry, the committee has not been authorized to conduct this investigation.
This decision is not to be construed as requiring that the Assembly adopt a resolution before any standing committee may conduct any investigation, although, the court notes that research has not revealed any New York cases where a legislative committee conducted an investigation in the total absence of an authorizing resolution or statute from the Legislature (see, e.g., Matter of Joint Legislative Committee (Teachers Union), 285 NY 1 [joint resolution]; Lanza v New *555 York State Joint Legislative Committee on Govt. Operations, 3 NY2d 92 [joint resolution]; People ex rel. McDonald v Keeler, 99 NY 463 [statute]; Paterson v Niagara County Legislature Committee on Investigations of Legislature of County of Niagara, 59 AD2d 1062 [resolution]; New England Petroleum Corp. v County of Suffolk, 52 AD2d 926 [four resolutions]; International Ry. Co. v Mahoney, 271 App Div 283 [statute]; People v Learned, 5 Hun 626 [concurrent resolution]; Matter of Alfaro v Joint Legislative Committee on Boxing, State of N. Y., 36 Misc 2d 1018 [joint resolution]; Matter of Withrow v Joint Legislative Committee to Investigate Educational System of State of N. Y., 176 Misc 597 [concurrent resolution]; People v Blacker, 113 Misc 400 [concurrent resolution]), which raises serious questions in this regard, especially in view of section 73.
The court, however, does not have to reach this issue. The scope of a committee’s jurisdictional authority is limited by its enabling resolution or statute. In the absence of a specific delegation of authority, the jurisdiction of Consumer Affairs and Protection Committee must be construed narrowly. Thus, it cannot be deemed to have been invested with power to conduct a sweeping investigation into savings banks, much less their lobbying efforts.
In any event, even assuming that the committee had demonstrated its authority, the court would quash the subpoenas on the grounds of improper service.
A subpoena is required to be served in the same manner as a summons (CPLR 2303). Each of the subpoenas in question was served on an officer of the respective banks and institution other than the named witness and concededly no copy was mailed. Thus, personal service was not effected on any of the petitioners.
Respondent’s contention that service as made, constitutes service on the two banks and the association is without merit.
Although if the subpoenas had been addressed to the banks and the savings association service would have been effective, here the subpoenas were clearly addressed to the individuals.
In Liberty Distrs. v Hempstead Nursery & Garden Center (58 Misc 2d 240), relied on by respondent, the subpoena was addressed to the corporation in care of a named officer rather than "by” the officer and the subpoena was personally served on the named officer. In A v Curran (61 Misc 2d 834), also cited by respondent, the issue was whether a proceeding to *556 quash the subpoena would be entertained where petitioners were only identified as "A”, "B” and "C”.
The court notes that were it not quashing these subpoenas on grounds of lack of authority and jurisdiction, and upon lack of personal service, it would modify the subpoenas drastically. They call for records of the activities of the banks and of the banking association which would be massive, voluminous and overwhelming. Only a relatively small portion of such records would be directly related to the scope of the announced investigation. It would be burdensome and extremely time consuming to produce such records, and there is no practical way that the committee, even with an outstanding staff, could digest all such material and make a report, presumably in time for a forthcoming session of the Legislature. Given subpoenas which demand items of information so far in excess of that which is required, no court should be required to undertake the task of pruning such demands to manageable proportions.
For all of the foregoing reasons, the petitions are granted and each subpoena is quashed.

. The subpoena addressed to Mr. Costiglio also states that the inquiry covers membership of savings banks in the association and lobbying and other activities conducted by the association.

. Section 73 was designed to place restraints on the "alarming effect of uncurbed interrogation” (see Governor’s Memorandum, NY Legis Ann, 1954, pp 394-396) and the "fair procedure” rights afforded by section 73 have been judicially construed as due process safeguards designed to provide "fundamental fairness” in investigations. (People v Pastore, 50 AD2d 1088; Matter of Quinn v Lane, 36 Misc 2d 2, 4.)