In the Matter of ANTHONY B. FUSCO et al., Respondents, against ROBERT MOSES, as Chairman of the Triborough Bridge and Tunnel Authority of the City of New York, Appellant.

Argued May 27, 1952; decided July 15, 1952.

*G. Frank Dougherty* and *Ruth I. Wilson* for appellant. I. The charges were meticulously proved. The proof had all been collected before petitioners were suspended from duty. It is impossible to attribute, and petitioners' counsel does not attempt to attribute, the determination of guilt to anything Berninger heard in Mr. Schwartz' office. It was error to ignore these facts as immaterial. (*Matter of Schadler* v. *Graves*, 258 App Div. 451, 282 N. Y. 716; *Matter of Carlson* v. *Delaney*, 262 App. Div. 1011; *People* v. *Swift*, 161 Misc. 851, 251 App. Div. 808, 277 N. Y. 618.) II. The Authority did not send Berninger to Mr. Schwartz' office. It did not instigate or suggest the visits or know of his intention to make them. Berninger knew

that he had no authority to act as detective for the Authority at the time of these visits. In the face of these proven facts it was error for Special Term to assume, on a basis of mere surmise and suspicion, that Berninger attended the meetings in Mr. Schwartz' office as an agent for the Authority. (*Scher* v. *United States*, 305 U. S. 251; *United States* v. *Rogers*, 53 F. 2d 874; *Shore* v. *United States*, 49 F. 2d 519.) III. It was error to find that petitioners were denied the assistance of counsel. Up to the time of his withdrawal on October 24th, they were represented by Mr. Schwartz. He interviewed each of them privately before the hearings and zealously conducted their defense until he withdrew. Opportunity to get another lawyer and an adjournment for that purpose were then offered and were waived by all petitioners. IV. No prejudice to petitioners is shown or even claimed. No possibility of exoneration is shown or claimed to have been lost because of Berninger's mistaken action. (*Canizio* v. *New York*, 327 U. S. 82; *People* v. *Perez*, 300 N. Y. 208; *People ex rel. O'Neill* v. *Bingham*, 132 App. Div. 667; *People ex rel. Brown* v. *Greene*, 106 App. Div. 230, 184 N. Y. 565.) V. In the absence of any showing of prejudice or claim of innocence the application should be dismissed. (*People ex rel. Weston* v. *McClave*, 123 N. Y. 512; *Matter of People ex rel. Burby* v. *Common Council of City of Auburn*, 85 Hun 601; *People ex rel. Flanagan* v. *Board of Police Comrs. of City of N. Y.*, 93 N. Y. 97; *People ex rel. Fitzpatrick* v. *French*, 32 Hun 112; *People ex rel. McCarthy* v. *Board of Police Comrs. of City of N. Y.*, 98 N. Y. 332; *Sharkey* v. *Thurston*, 268 N. Y. 123; *Matter of Miller* v. *Kling*, 291 N. Y. 65; *State ex rel. Rockwell* v. *State Bd. of Educ.*, 213 Minn. 184; *People ex rel. Cunningham* v. *Bingham*, 134 App. Div. 602; *Matter of Yates* v. *Mulrooney*, 245 App. Div. 146; *Matter of Smith* v. *Lyons*, 262 App. Div. 374; *People ex rel. O'Shea* v. *Lantry*, 44 App. Div. 392; *People ex rel. O'Neill* v. *Bingham*, 132 App. Div. 667; *Pike* v. *Walker*, 121 F. 2d 37; *Whitney* v. *Judge of Dist. Ct.*, 271 Mass. 448.)

*Asher W. Schwartz* for respondents. I. The right to counsel included the right to the private aid of counsel in preparation for trial and the right to consult with counsel in confidence without, in either case, the presence of any agent of appellant, whether such agent were present by compulsion or by deceit.

The undercover presence of appellant's agent during private communication between petitioners and counsel in discussions of the charges and during their preparation for trial deprived petitioners of their right to counsel. (*People ex rel. Ellett* v. *Flood,* 64 App. Div. 209; *People ex rel. Mayor of City of N. Y.* v. *Nichols,* 79 N. Y. 582.) II. An intrusion, whether by force or deceit, into private consultation between attorney and client preparatory to trial constitutes a denial of the right to counsel. (*Coplon* v. *United States,* 191 F. 2d 749; *People* v. *McLaughlin,* 291 N. Y. 480; *Glasser* v. *United States,* 315 U. S. 60; *Powell* v. *Alabama,* 287 U. S. 45; *Ex Parte Rider,* 195 P. 965 [Cal.]; *People ex rel. Burgess* v. *Risley,* 66 How. Prac. 67.) III. Petitioners were deprived of their right to counsel within the meaning of the law as herein set forth, in that an agent of the disciplining agency was present by deceit during the most vital phase of the exercise by petitioners of their statutory right to counsel. (*United States* v. *Coplon,* 185 F. 2d 629; *United States* v. *Venuto,* 182 F. 2d 519; *People ex rel. Mayor of City of N. Y.* v. *Nichols,* 79 N. Y. 582.)

LEWIS, J. We review a nonunanimous order of the Appellate Division affirming an order of Special Term which annulled resolutions by the Triborough Bridge and Tunnel Authority of the City of New York dismissing petitioners from their positions as bridge and tunnel officers and directing restoration of their civil service status and rights.

The petitioners, as veterans and employees in the competitive class of civil service, were accorded hearings upon stated charges. (Civil Service Law, § 22.) Thereafter the Authority, by formal resolutions, dismissed the petitioners upon its determination that, while employed as toll collectors at the Bronx-Whitestone Bridge, they had been guilty of neglect of duty, and had violated the Authority's rules and regulations by corrupt dealings in prepaid toll tickets, passes and cash tolls.

At Special Term the Authority's resolutions of dismissal were annulled on the theory that petitioners had been denied the right to be represented by counsel with whom they could consult in circumstances which were confidential. At the Appellate Division, where the order of Special Term was affirmed, one Justice dissenting, the following questions were certified:

" 1. Do the petition, answer, affidavits and the record of petitioners' hearings show facts sufficient to entitle petitioners to an annulment of the resolutions of the Triborough Bridge and Tunnel Authority dated October 31, 1950, dismissing the petitioners from the service of the Authority?

" 2. Was petitioners' right to the assistance of counsel ' violated to the prejudice of the petitioners ' within the meaning of subdivision 5 of Section 1296 of the Civil Practice Act? "

The record discloses that tolls of the Triborough Bridge and Tunnel Authority are payable either in cash or by the presentation of prepaid toll tickets, the latter method of payment being frequently employed by business concerns which regularly use the bridges and tunnels operated by the Authority. Such concerns purchase books of toll tickets from the Authority which are then given to the drivers of company vehicles for use in payment of the toll charges.

On July 21, 1950, one John Berninger, employed as a bridge and tunnel officer at the Bronx-Whitestone Bridge, reported to his superior, Lieutenant Milton Rogers, that unused prepaid toll tickets, which had been misappropriated from their owners by truck drivers or other persons, were being sold to bridge and tunnel officers for less than face value — usually at half price. According to Berninger, tickets thus acquired were being included by certain bridge officers among daily toll receipts, the officers withdrawing and retaining cash equal to the full value of the prepaid toll tickets thus substituted. Lieutenant Rogers, who was then acting captain in charge of the Bronx-Whitestone Bridge, thereupon reported Berninger's conversation to his superior and — at the latter's suggestion — requested Berninger to obtain as much information as possible about the corrupt transactions. In accord with direction by Lieutenant Rogers, Berninger continued in his position and in so doing not only participated in the unlawful manipulation of tolls, but gathered and relayed to his superior detailed information regarding the misappropriations and the persons involved therein.

On September 28, 1950, Berninger and several bridge and tunnel officers were summoned to the office of the District Attorney of Bronx County where they were questioned with regard to the handling of toll tickets and notified of their suspension from duty pending investigation by the Bridge Authority. Although

Berninger on that occasion was told of his suspension in the presence of the other suspected employees, that notification was not intended to be effective but had as its sole purpose the concealment of Berninger's identity as an informer for the Bridge Authority. Berninger himself was apprehensive of the safety of himself and his family if his co-operation with the bridge authority as an informer should become known, and it was at his request that he was ostensibly suspended from duty and later was served with formal charges of misconduct.

On the day of their appearance at the District Attorney's office, the suspected employees — including the petitioners herein — determined to consult an attorney, and, on the following day, September 29, 1950, all or most of such employees, including Berninger, called upon Asher W. Schwartz, whom they retained to serve as their attorney in whatever proceeding should eventuate. It is Berninger's testimony that he continued to fear his status as an informer might become known if he did not accompany his fellow employees to the attorney's office. The following excerpt from Berninger's testimony bears upon our inquiry:

"Mr. Schwartz [counsel for petitioners and Berninger]: After I met that group and with all discussing the case with me and the trouble you were in, I interviewed each man personally, is that correct?

"Mr. Berninger: Yes, sir.

"Mr. Schwartz: And you came in to me personally, is that right?

"Mr. Berninger: That is right.

"Mr. Schwartz: At that time, didn't I say to you at the outset that you were coming to me as a client to a lawyer and that whatever you told me in that discussion would be privileged and that I was not free to disclose to anybody, including any union official or any other party to these proceedings?

"Mr. Berninger: I believe so.

"Mr. Schwartz: And I told you that I would not disclose that, is that correct?

"Mr. Berninger: That is correct."

On October 14, 1950, formal charges of misconduct, together with notice of hearings to commence on October 18th were served upon petitioners and Berninger. Three days later, on October

17, 1950, the petitioners and Berninger again consulted their attorney, on which occasion Berninger gave no indication that the charges against him were not valid. In the afternoon of the date of that conference, the attorney contacted the attorney for the Authority and then furnished the names of the suspended officers by whom he had been retained to represent them at the hearings. Included among the names so listed was that of the informer Berninger.

At the hearings upon the charges, commencing on October 18, 1950, Berninger testified as a witness for the Authority, at which time his status as an informer was not revealed. Although the petitioners' attorney was not present at the next hearing on October 19th, he appeared on the following day at which time Berninger informed him that his retainer was withdrawn. At the hearing of October 23d Berninger again testified as a witness for the Authority and on that occasion he frankly admitted his role as a " checker " and recited in detail his activities leading up to the filing of charges against himself and the petitioners herein.

It thus appears from an affidavit filed by Berninger and from his testimony that for a period of more than two months he acted as a " checker or informer " for the Authority in furtherance of its investigation to determine whether there existed misconduct and neglect of duty among the bridge and tunnel officers as toll collectors at the Bronx-Whitestone Bridge. It also appears that, although Berninger and each of the petitioners had received from the Authority a notice of hearings to be held upon charges made against them, in which notice each was advised of his right to be " represented by counsel ", he participated in conferences — of which the first was on September 29, 1950 — when he and the petitioners consulted with the attorney whom he and they had retained, without his revealing the fact that since July 21, 1950, he had acted as an informer for the Authority in furtherance of its investigation.

Upon evidence to which reference is made above the learned Justice at Special Term concluded (200 Misc. 196, 197–198): " The proceedings are not void if petitioner is not represented by counsel. They only assume that aspect if respondent deprives him of that right. Respondent [the Authority] denies sending Berninger to the consultation or having prior knowledge that

he would attend it. It is claimed that Berninger's presence resulted from his own act induced by a fear to disclose his true relationship to the situation. It is argued that any loss of rights which resulted from Berninger's act, as far as the authority is concerned, is fortuitous. This argument overlooks the fact that the respondent used Berninger for a special purpose and it would be drawing too fine a line to hold that his authority did not go to the extent of attending the meeting.''

We think the following statements by Lieutenant Rogers — Berninger's superior officer — in his affidavit of record before us, afford ample support for the conclusion reached at Special Term and affirmed at the Appellate Division: After referring to the fact that on July 21st, Berninger had told him of having observed '' mishandling of prepaid toll tickets '' by certain bridge and tunnel officers, the affidavit by Lieutenant Rogers states in part: '' Mr. Berninger said that he did not want to get involved in these transactions, which were becoming wide-spread among the men employed at the bridge. I reported this conversation to the Assistant Superintendent of Operations of the Authority and upon his advice the next day I suggested to Mr. Berninger that he endeavor to find out as much as he could about the transactions and, if necessary, *participate in them,* and to report in detail to me with respect to each transaction. * * * Thereafter, commencing on or about August 1st, Mr. Berninger reported to me from time to time, both orally and in writing, transactions involving the purchase of prepaid toll tickets by certain of the Bridge and Tunnel Officers and the distribution of these and other wrongfully acquired tickets among certain of the officers at the bridge and the deposits of these tickets in lieu of cash tolls with daily toll receipts turned in by the men. * * * He said that he saw certain of the accused men from time to time and on these occasions acted as though he too was under charges. For his safety *I advised him to continue the pretext.* * * * Mr. Berninger also told me that to avoid suspicion *he had gone along with a group of the accused men to the law office of O'Donnell & Schwartz, who had been retained by all, or practically all, of the 14 or 15 men who had been suspended pending hearings on charges of misconduct in the handling of the toll tickets.* Mr. Berninger said that he and the other men had told Mr. Schwartz

that they wanted him to act as their attorney '' (emphasis supplied).

The right accorded to the petitioners to be represented by counsel at hearings upon charges filed against them with regard to toll-ticket manipulation involved more than the mere privilege of being accompanied by an attorney at the hearings. It included the right to private consultation with the attorney of their choice free from the presence of an informer or '' checker '' who, as such, was following instructions given him by a responsible agent of the Authority. As was said by Judge DESMOND in *People* v. *McLaughlin* (291 N. Y. 480, 482–483): '' To give it [the right to counsel] ' life and effect * * * it must be held to confer upon the relator every privilege which will make the presence of counsel upon the trial a valuable right, and this must include a private interview with his counsel prior to the trial ' ''.

Appellant asserts that, even assuming Berninger attended the consultations as agent for the Authority, petitioners have not shown any prejudice resulting to their rights from his presence and, accordingly, the determination of the Authority should not have been annulled. That contention is based upon subdivision 5 of section 1296 of the Civil Practice Act which provides that one of the questions to be determined in an article 78 proceeding is — '' Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner.''

That statute, of course, does not change the fundamental rule that any deprivation of the right to counsel and to a fair trial is, in itself, a basis for annulment of a determination resulting therefrom (U. S. Const., 6th Amendt.; N. Y. Const., art. I, § 6; *People* v. *McLaughlin*, 291 N. Y. 480, 482–483, *supra*). Indeed, as to the application of that fundamental rule, it has been said: '' The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial '' (*Glasser* v. *United States*, 315 U. S. 60, 76; see, also, *Coplon* v. *United States*, 191 F. 2d 749, 760, certiorari denied 342 U. S. 926).

The suggestion that the cases last cited above do not apply to the present proceeding, inasmuch as we are here concerned with a disciplinary proceeding rather than a criminal action, is with-

out merit. Upon that aspect of the case we think what was written in *Matter of Greenebaum* v. *Bingham* (201 N. Y. 343, 347) — a case involving disciplinary action against a police officer — applies here with equal force: "While the hearing may be more or less informal, the trial must be fair in all substantial respects. Some latitude is allowed as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review." (See, also, *Glasser* v. *United States, supra,* p. 76.)

The order appealed from should be affirmed, with costs. Each of the certified questions should be answered in the affirmative.

FULD, J. (dissenting). Petitioners were discharged from their positions as toll collectors by the Triborough Bridge and Tunnel Authority of the City of New York, following hearings upon charges of misapplication of toll tickets and misappropriation of funds at one of the Authority's bridges. The evidence against them was in large measure gathered by one Berninger, a fellow employee, who served as an undercover investigator for the Authority, and whose activities, as such, were completed on September 28, 1950, when petitioners were suspended. Fearful of reprisals if petitioners were to learn of his activities, Berninger asked that he be suspended along with petitioners. Then, that having been done, Berninger, on his own initiative and without advising anyone connected with the Authority, joined petitioners in "retaining" attorney Asher W. Schwartz and in attending two conferences held by Mr. Schwartz at his office before the hearings were scheduled to begin on October 18th.

That it was Berninger's own idea both to "retain" Mr. Schwartz and to visit the latter's office with petitioners when they conferred with him, cannot, in the light of the evidence, be disputed. In point of fact, not only did no one associated with the Authority request or suggest to Berninger that he do either the one or the other, but no official of that body had any inkling that Berninger had seen Mr. Schwartz until the evening of October 17th, after the conclusion of the second conference — and that was some weeks after petitioners had been suspended and several days after formal charges of misconduct had been

filed and served upon them. It is likewise indisputable, first, that all of the evidence upon which the charges were predicated had been gathered prior to the time that Berninger had " retained " Mr. Schwartz; second, that Berninger obtained no additional evidence or information as a result of attending the conferences at the lawyer's office; and, third, that his presence there in no way operated to petitioners' prejudice.[1] In brief, Berninger's action in joining with petitioners occurred after he had concluded his work as an undercover investigator, was his own idea and was conceived solely for his own personal protection.

Guilt having been proved beyond all question, petitioners challenged the Authority's decision solely on the ground that they were denied a fair hearing by reason of Berninger's intrusion into their conferences with their attorney. They urge that they were deprived of the right of private consultation with counsel in preparation for the hearings. The courts below, agreeing with that contention, have annulled the Authority's determination and directed reinstatement of petitioners' jobs and restoration of their civil service rights.

---

1. Berninger swore — and no one disputed or contradicted him — that " Neither Mr. Dougherty, who was acting as counsel for the Authority, nor anyone else connected with the Authority ever suggested that I visit Mr. Schwartz' office or that I should retain him as my attorney." And it is clear from the affidavit of Lieutenant Rogers, to whom Judge LEWIS refers in his opinion, that he learned of Berninger's retention of Mr. Schwartz and his visits to the latter's office only after they had taken place; thus, he asserted, " Mr. Berninger also told me that to avoid suspicion he *had gone* along with a group of the accused men to the law office of O'Donnell & Schwartz ".

Moreover, the record conclusively demonstrates that Berninger neither acted as informant nor reported anything to Rogers or to anyone else after the middle of September; it was not until September 29th, I note, that he first saw attorney Schwartz. Thus, Berninger averred, " The period covered by these reports made to Lieut. Rogers was from about the first of August 1950 until shortly after the middle of September of that year ". Lieutenant Rogers confirmed that with the statement that " All Mr. Berninger's reports on the mishandling of the toll tickets by the men at the bridge were made to me prior to the time of their suspension on September 28th." And the Authority's counsel, Mr. Dougherty, likewise declared, " I know and emphatically state that the Authority's information had all been collected before the notice of suspension was given on September 27 [*sic*] and that no information or evidence used on the hearings was obtained through Berninger's visits to Mr. Schwartz' office ".

Opportunity for private consultation with counsel is an essential element of the right to be represented by an attorney, so essential that a deprivation of that opportunity or an intrusion upon the privacy of consultation by government, or one of its agencies, must be deemed a denial of that right. (Cf. *Coplon* v. *United States,* 191 F. 2d 749, 759–760, certiorari denied 342 U. S. 926.) I would agree, therefore, that petitioners would be entitled to a vacatur of the Authority's determination, if the Authority had had anything to do with Berninger's attendance at the conferences or if it had made use of any information obtained at those conferences. Where, however, as in the case before us, the record is devoid of any such evidence — where it appears without contradiction that Berninger had acted as he did without the knowledge or authorization of the agency, prompted solely by personal considerations of his own — to annul the Authority's decision, not only would extend the scope of the right of representation by counsel beyond all reasonable limits, but would serve no possible purpose. While justice is our objective, fair dealing our aim, I cannot perceive how invalidating the Authority's action would advance either. Highly apposite are the words of Mr. Justice CARDOZO in a capital case: " justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament." (*Snyder* v. *Massachusetts,* 291 U. S. 97, 122.) I would confirm the determination of the Authority.

The order appealed from should be reversed and the petition dismissed.

LOUGHRAN, Ch. J., DESMOND and DYE, JJ., concur wth LEWIS, J.; FULD, J., dissents in opinion in which CONWAY and FROESSEL, JJ., concur.

Order affirmed, etc.