UNITED STATES ex rel. COOPER et al., Relators-Appellants,

v.

Wilfred I. DENNO, Warden of Sing Sing Prison, Respondent-Appellee.

No. 230, Docket 23497.

United States Court of Appeals Second Circuit.

Argued Feb. 15, 1955.

Decided April 7, 1955.

Writ of Certiorari Denied June 6, 1955.

See 75 S.Ct. 906.

Nathan Kestnbaum, New York City, for relators-appellants.

Jacob K. Javits, Atty. Gen. of State of New York, Henry S. Manley, Sol. Gen., Albany, Vincent A. Marsicano, Asst. Atty. Gen., Joseph F. Gagliardi, Dist. Atty. of Westchester County, White Plains, N. Y., John J. O'Brien, White Plains, of counsel, for respondent-appellee.

Before FRANK and MEDINA, Circuit Judges, and BRENNAN, District Judge.

BRENNAN, District Judge.

This appeal brings for review the order of the District Court which dismissed a writ of habeas corpus based upon the application of three petitioners (the appellants herein) who stand convicted in a state court of the crime of murder in the first degree. The sufficiency of the evidence presented by the petitioners to establish the charge of a purposeful intrusion upon their rights to confer with counsel during the course of the trial is the principal question raised.

After conviction in the County Court of Westchester County, New York, the Court of Appeals affirmed the judgments People v. Cooper, 303 N.Y. 856, 104 N.E. 2d 917, and they were again affirmed in the U. S. Supreme Court, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522. In accordance with state practice a motion in the nature of a writ of error coram nobis, attacking the validity of the judgments, was made in the court of original jurisdiction. Intermediate steps need not be enumerated but a hearing was eventually held. Oral evidence was submitted. It was stipulated that facts contained in affidavits filed should be considered as if offered by oral testimony and the motion was denied with a memo opinion. The Court of Appeals granted a reargument of the appeal from the judgment, taking into consideration the facts adduced in the coram nobis application. The previous convictions were affirmed, 307 N.Y. 253, 120 N.E.2d 813. The U. S. Supreme Court denied certiorari on Nov. 8, 1954, 348 U.S. 878, 75 S.Ct. 118. Applications for rearguments in the Court of Appeals and for a rehearing in the Supreme Court were later denied. A joint petition for a writ of habeas corpus was filed in the U. S. District Court for the Southern District of New York on Jan. 10, 1955. Oral argument was had thereon and the District Court on Jan. 17, 1955 dismissed the writ upon the filing of a comprehensive opinion. This appeal followed.

The sufficiency of the prior legal proceedings are not challenged so that the contentions of the petitioners were properly before the District Court.

· [1] The court below, having the state court record available, made the determination that same was sufficient to resolve the contentions advanced and that a hearing, at which evidence would be received, was unnecessary. There seems to be no disagreement as to that phase of the decision.

Under the circumstances, it was the obligation of the lower court to make independent inquiry and examination of the state court record, to determine the existence of procedural due process, the

correct application of legal precedents, the overall fairness of the proceedings and the soundness of the conclusion reached. Such inquiry and examination is to be made in the light of the present day concept of due process and with respectful appreciation of the prior determinations made in the state court which must not however override the independent action and judgment of the District Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

■ Our power and obligation on this appeal would seem to follow the rule in civil causes. Same is not to be rigidly confined since we are in as good a position as the lower court to make an overall appraisal of the state court record.

The contentions that the judgments of conviction are tainted with the knowing use of perjured testimony and that the prosecution suppressed material evidence were held to be without merit by the Court of Appeals and by the lower court, the same conclusion is reached here, no discussion is necessary.

The principal contention advanced by the petitioners is to the effect that their fundamental rights were violated in that police officer Rubin was "planted" in a seat reserved for spectators at the trial to overhear private and privileged communications between the parties and their attorneys during the course of the trial. If the allegation, without more, is supported by evidence which will justify such a finding, then petitioners' fundamental rights have been denied. That such action resulted in no prejudice to the accused does not void or excuse the violation. Glasser v. U. S., 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Coplon v. U. S., 89 U.S.App.D.C. 103, 191 F.2d 749, certiorari denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690; Caldwell v. U. S., 92 U.S.App.D.C. 355, 205 F.2d 879; Fusco v. Moses, 304 N.Y. 424, 107 N.E.2d 581. The question then as to whether lawyer-client confidential communication were in fact overheard or reported here becomes only important as it bears on the main question.

■ The lower court found as did the N. Y. Court of Appeals that "Defendants failed utterly to show that Rubin was planted to listen in on or report conversations between defendants and their lawyers". Our problem then becomes one of appraising the pertinent evidence bearing upon such a contention. The details of such evidence are referred to in the opinion of the Court of Appeals and in the opinion of the lower court. They are briefly summarized below.

Each of the petitioners has a rather impressive criminal record. During the trial, a deputy sheriff was seated behind and in close proximity to each of them. During the course of the trial, they conversed among themselves and with two of their counsel in the Yiddish language. On the last five days of the seven week trial, police officer Rubin, who understood the Yiddish language, occupied a seat in the spectators' box about four feet from the counsel table. He was not in uniform and he did not carry a weapon. He was the only member of the local police force who understood the Yiddish language. Petitioners offer evidence to the effect that the counsel table, above referred to, had been moved from a position about seven feet from the spectators' box to a position within three or four feet thereof. It is mainly upon the above evidence that the petitioners rely to establish an unlawful intrusion upon the client-lawyer relationship.

This evidence is met by positive denials that Rubin occupied his position in the court room for the purpose of listening to conversations taking place at the counsel table. Such denials are made by the members of the prosecutor's staff and those in charge of the provisions made for the safety of the public, the security of the prisoners and the orderly conduct of the trial. Rubin's presence in the court room with other peace officers is accounted for as an additional security measure taken when the authorities received information which led them to believe that the prisoners contemplated an escape during a lunch period.

■ It is fair to say that petitioners' evidence rests solely upon circumstances, inferences and suspicions. There is no positive evidence which supports the charge, the burden of which is upon the petitioners. Brown v. Allen, supra, 344 U.S. 458, 73 S.Ct. 407.

It is to be noted that petitioners failed to make inquiry from those in a position to supply the information as to the circumstances under which Rubin was assigned to the court room and the instructions he received upon such assignment. The petitioners in effect seem to combine the claim that the counsel table was moved to a position nearer the spectators' box with the presence of a Yiddish speaking police officer in a seat nearest to the table as substantial evidence sufficient to establish their eavesdropping contention. Such evidence is reduced in its weight by the positive affidavits of those in authority as to the assignment of additional officers upon the discovery of the so-called escape threat. The time relation of the discovery of the threat and the appearance of the police officer together with the fact that petitioners' own evidence seems to show that the counsel table was moved closer to the spectators' box some four or five days before the officer's appearance tend to destroy the factual basis to support an inference of purposeful intrusion.

■ As above stated, the petitioners appear to rely upon the claim that their rights were violated by an intentional, subtle intrusion upon the lawyer-client relationship. The argument is made, however, that even if Rubin's presence was justified for security purposes, his encroachment was unlawful because he was in a position to hear confidential lawyer-client communications. This argument is tantamount to the assumption that the right of privacy of lawyer-client communications overrides reasonable security measures. We do not agree. "The people of the State are also entitled to due process of law". Stein v. People of State of N. Y., 346 U.S. 156, at page 197, 73 S.Ct. 1077, at page 1099, 97 L.Ed. 1522. Such rights are not necessarily mutually exclusive. Each must yield to the rule of reason. In case of actual or possible conflict, the rule is to be applied by the court in the light of the existing circumstances.

■ Due process is tested by the setting in which it occurs. Betts v. Brady, 316 U.S. 455, at page 462, 62 S.Ct. 1252, 86 L.Ed. 1595. A crowded court room creates one situation. A vicious or insubordinate defendant may create another. Such situations are different from one wherein an attorney-client conversation is intercepted by wire tap or by intentional deceit or deception. In the court room both client and attorney are conscious of the presence of third persons and necessarily must know from the location of such persons as to whether or not their conversations may be overheard. The ability to converse in a so-called foreign language may not insure secrecy.

In this particular case, the attorney for one of the petitioners recognized Rubin as a police officer, noticed where he sat and attached no significance to his presence. So we have here a situation where three deputy sheriffs were stationed in close proximity to the prisoners. This situation was known and obvious to both attorneys and clients. A police officer was located also in close proximity to the counsel table. This fact was known to one of the counsel engaged in the trial. No protest against actual or possible encroachment upon the prisoners' rights was made. All persons involved apparently recognized that lawyer-client privacy must yield within reasonable bounds to security measures. The petitioners' whole contention appears to be an afterthought, prompted by a magazine article and urged upon the court with the hope that circumstances and suspicions will prevail over positive evidence.

The evidence here falls far short of the required showing of a denial of petitioners' fundamental rights.

The order is affirmed.

FRANK, Circuit Judge (concurring).

1. Rubin appeared in the courtroom, only after a deputy sheriff had overheard a conversation in Yiddish between two of the defendants, while in the county jail, suggesting that they might attempt to escape from the courthouse during one of the noon-hour recesses of their trial. The deputy sheriff reported this conversation to his superiors. As the New York Court of Appeals said: "The inference is almost inescapable that it was the report of defendants' escape-plan conversation that brought Rubin into the courtroom." [307 N.Y. 253, 120 N.E.2d 816.] As Rubin was unarmed, while other officers in the courtroom were armed, he could not have been called in to attend the trial for the purpose of overcoming the defendants if they sought to escape. It seems clear, then, that the "security" purpose of having him present was to have him, who understood Yiddish, overhear remarks, made in Yiddish, by the defendants to one another, which would disclose their intention to escape. The affidavits of the state officials (accepted as evidence) state that Rubin was not instructed to listen to consultations between the defendants and their attorneys; but, significantly they do not deny that he was instructed to listen to what defendants might say to one another with respect to an escape. Now it is obvious that (1) if Rubin was to overhear what defendants said among themselves, (2) he would necessarily overhear what defendants said to their counsel. The second was not the purpose of having him in the courtroom. But, as noted below, the absence of that second purpose is immaterial.

All the foregoing would be of no importance, if the defendants in their courtroom consultations with their counsel had been conversing in easily audible tones. For they had no right to assume that, if and when they conversed in this public manner, someone with knowledge of Yiddish would not hear and understand what they said. Accordingly, as there was no privacy in these lawyer-client discussions in the courtroom, there was no unlawful intrusion on such privacy.

But there is another fact in the record, which is disturbing. As the New York Court of Appeals noted in its opinion: "A deputy sheriff told defendant Cooper not to lean over in speaking to one of his lawyers, which resulted in Cooper's speaking in a 'louder tone of voice' than he would otherwise have used". The consequence of this order was that it became possible for Rubin to overhear conversations between defendants and their counsel, as it would not have been otherwise. This fact leaves me in some doubt. I resolve it thus: When defendants were prevented from talking to their lawyers in such a way that others could not overhear them, they were at once on notice that thereafter they might be overheard. The admonition of the deputy sheriff may have been error, but it was a fact which defendants and their counsel knew and to which they made no objection. Accordingly, I concur in my colleagues' decision.

2. But I want to dissociate myself from what I think my colleagues' unnecessarily sweeping statement that "reasonable security measures" can, in some circumstances, justify intrusion on "the right of privacy of lawyer-client communications." In Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879, one Bradley, a government agent, had worked himself into the confidence of defendant's attorneys. The government learned that the defendant was considering the theft of certain files— including the file in Caldwell's case— from the United States Attorney's office. Then the government secretly instructed Bradley, as a security measure, to become employed by the defense. Throughout the trial, Bradley, a government agent, doubled as a defense counsel's assistant. The court said, 205 F.2d at page 881: "We do not mean to deny the right—indeed the duty—of prosecuting officials to seek to uncover, prosecute and punish resort by accused persons and their counsel to theft of files or other un-

lawful means of defense. We recognize that the prosecutor in this case was faced with a real dilemma, once the possibility of a theft of the files had been reported by Bradley. *We do not question that he then acted with what must have seemed high motives, and certainly with active diligence. But high motives and zeal for law enforcement cannot justify spying upon and intrusion into the relationship between a person accused of crime and his counsel.*" (Emphasis added.) The court went on to hold that, when there is such an intrusion, defendant need not prove that actual prejudice resulted, i. e., need not prove that the prosecutor learned anything which he did not otherwise know.

See also Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749, 759–760, in which the court held that, where the government had intercepted telephone conversations between Miss Coplon and her attorney, she was entitled to a new trial, regardless of whether resultant prejudice was shown. (Proctor, J., dissented on this point.) In United States v. Venuto, 3 Cir., 182 F.2d 519, in which the court held that, where the trial court had unjustifiably forbidden defendant to consult with counsel during the trial recess, defendant, in order to obtain a new trial, did not need to prove that prejudice had resulted. In Melanson v. O'Brien, 1 Cir., 191 F.2d 963, defendant in a rape case in a state court was denied the benefit of counsel; the First Circuit held he must be released on habeas corpus, even if the proof of his guilt was so overwhelming that it could not be shown that he could have been prejudiced by the absence of counsel. In Glasser v. United States, 315 U.S. 60, 75, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, Glasser had been compelled against his choice to share counsel with a codefendant. The Court said: "To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretsky is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." And intrusion on conferences between lawyer and client is an unconstitutional interference with the right to counsel.

The foregoing authorities establish a salutory, prophylactic rule. It relieves the defendant of a practically impossible burden of proving that the unconstitutional conduct worked actual harm to him.[1] A rule or constitutional principle is useless, if the burden of proof necessary to vindicate it is so heavy as to preclude its being effective. (Kenney tells us that, at one time, in Canon law, the conviction of a Cardinal for certain kinds of offenses required the testimony of seven eye-witnesses.[2] Assuming that Kenney's report is correct, one can guess how many Cardinals were ever convicted, with so heavy a burden of proof on their accusers.)

I think it irrelevant that the purpose of the eavesdropping here was not to overhear lawyer-client conversations, when, unavoidably, the plain-clothes policeman, if he overheard anything, would be bound to overhear such conversations. Suppose the state officials, solely in order to overhear escape-plan discussions, had put a concealed dictaphone under the table at which defendants and their counsel were seated at the trial. Surely, the limited purpose of such a device would not have avoided reversible error; nor (for reasons stated above) would reversal have been avoided if defendants failed to prove that the prosecution learned anything by the use of such a device. The same would be true if a government agent, masquerading as a prospective defense witness, solely exerting an improper influence upon Judge Davis. * * *"

1. Cf. Root Refining Company v. Universal Oil Co., 3 Cir., 169 F.2d 514, 535–541, where the court said that "there will be no need to consider whether or not in this case Kaufman actually succeeded in

2. Kenney, Criminal Law (1936 Ed.) 456; Ford Motor Company v. Ryan, 2 Cir., 182 F.2d 329, at page 331, note 6.

in order to learn of escape plans, were present at lawyer-client discussions in the office of one of defendant's lawyers.

To sum up, I think what saves the judgments of conviction here is (1) that the discussions were not in private and (2) that, when the sheriff prevented defendants from conferring with their lawyers in low tones, they did not object.