Froessel, J.
Plaintiffs, an attorney and his alleged client, brought this action to restrain defendants, a New York State Joint Legislative Committee, its chairman and counsel, from ‘ ‘ using ’ ’ or divulging a communication said to be confidential and contained in a recording thereof illegally obtained, and for related relief. At the same time, plaintiffs moved for a temporary injunction for the same relief. Defendants cross-moved to dismiss the complaint for lack of jurisdiction and for legal insufficiency under subdivisions 1 and 4 of rule 106 of the Buies of Civil Practice. Special Term, New York County, by two separate orders, granted the injunction pendente lite, and denied defendants’ cross motion. The Appellate Division unanimously reversed both orders, granted defendants’ cross motion to dismiss, and denied the motion for a temporary injunction.
Plaintiffs in their complaint allege, among other things: That the defendant, New York State Joint Legislative Committee on G-overnment Operations, was duly created in 1955* *96 by the Legislature of the State of New York to investigate and examine the management of any State department, board, bureau, commissioner or other agencies of the State; that said committee was empowered by the Legislature to make studies, among other things, of the operation of State government with a view towards determining its economy, efficiency and effectiveness ; administration of State laws and the detection and prevention of unsound, improper or corrupt practices; and was authorized to exercise the powers granted to legislative committees by the provisions of the Legislative Law.
That in February, 1957 the committee undertook to investigate the facts and circumstances concerning the parole violation of plaintiff Joseph Lanza. On April 26, 1957, an announcement appeared in the newspapers to the effect that the committee would hold public hearings beginning on April 29th, in the course of which it would make public a certain recording of conversations between Cosentino and his client Lanza, which had come into its possession, and which plaintiffs claim was made without their knowledge or consent. The recording is alleged to have been made on February 5th and 6th in the counsel room of the Westchester County Jail when no one else was present.
Some of the foregoing allegations are contradicted in the affidavits submitted by defendants in opposition to the motion for a temporary injunction. It is true, as referred to in Judge Desmond's opinion, that the committee counsel stated upon the argument that the intentional secret interception of a confidential communication between attorney and client in the counsel room of a prison is repugnant, but it is also true that he offered to the court the minutes of the committee’s hearing which, he stated, would demonstrate beyond doubt that this simply did not take place here. Because of the objection by plaintiffs’ attorney, we were not permitted to examine these minutes. Whatever the actual facts may be, however, we are required, on a motion attacking the complaint on its face, to assume its allegations to be true (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 458; Blanshard v. City of New York, 262 N. Y. 5, 12).
The primary question presented to us is: May the New York State Joint Legislative Committee on Government Operations, an arm of the State Legislature, one of the three co-ordinate *97 branches of our State government, and its named representatives, be enjoined by the courts from making a part of its record at a public session a tape recording and transcript, now in its possession, of an alleged private conference between Lanza and Cosentino while in a local county jail? It is not denied that the subject matter of this tape recording is within the scope of this committee’s inquiry.
Plaintiffs contend that the use and divulgence of the recording in question violate the privilege between attorney and client afforded by the provisions of section 353 of the Civil Practice Act, and impair the client’s constitutional right to counsel. The attorney-client privilege is of common-law origin (8 Wigmore on Evidence [3d ed., 1940], § 2290 et seq.; Whiting v. Barney, 30 N. Y. 330), and as adopted by the people of this State is now embodied in sections 353 and 354 of the Civil Practice Act. Section 353 merely provides that an attorney (and his employees) “ shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment ”. Section 354 states: “ The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the * * * client.” (Emphasis supplied.)
Thus the statute seals the lips of the attorney and affords a privilege against testimonial compulsion, unless waived by the client. In other words, it forbids the disclosure of such evidence by an attorney (and his employees) when examined as a witness. So it has been held with respect to physicians, who “ are accorded the same statutory recognition, sanction and protection ” as attorneys (Matter of New York City Council v. Goldwater, 284 N. Y. 296, 300; Buffalo Loan, Trust & Safe Deposit Co. v. Knights Templar & Masonic Mut. Aid Assn., 126 N. Y. 450). If either should in conversation disclose such secrets, he would, we said in the last-cited case (p. 455), “ violate no statute, however reprehensible his conduct would be ”.
The statute does not inhibit disclosures by other persons who have overheard the conversation (Cary v. White, 59 N. Y. 336, 339; Erlich v. Erlich, 278 App. Div. 244; Sparer v. Travelers Ins. Co., 185 App. Div. 861; Hobbs v. Hullman, 183 App. Div. 743; see People v. Decina, 2 N Y 2d 133, 144; Baumann v. Stein *98 gester, 213 N. Y. 328; 8 Wigmore on Evidence [3d ed., 1940], § 2326; 58 Am. Jur., Witnesses, § 365; Richardson on Evidence [8th ed.], § 438). It follows that when neither the attorney nor the client is examined as a witness, the statute does not create a right to prevent the disclosure of a confidential communication, and accordingly does not authorize a cause of action for an injunction.
The committee in the instant case does not seek to compel the attorney or the client to testify as to the confidential communication and is not, as in Matter of New York City Council v. Goldwater (supra), invoking the power of the court to compel plaintiffs or anyone else to disclose information they are forbidden to disclose. It is seeking to make a part of the public record of its investigation information which has come to it in the course thereof.
Of course, we agree with the courts below that the secret recording of the conversations in the manner alleged in the complaint was an unreasonable interference with Lanza’s right to confer privately with counsel (see People v. Cooper, 307 N. Y. 253; United States ex rel. Cooper v. Denno, 221 F. 2d 626, cert. denied 349 U. S. 968; Altmayer v. Sanford, 148 F. 2d 161). However, that is not the issue here; it is the “ use ” of the recording that is sought to be enjoined. The interference by undisclosed persons has already taken place. It is clear that if such interference had occurred in connection with a proceeding directed against Lanza, any resulting determination would be annulled by the courts on the ground that the interference with his right to counsel had destroyed his constitutional right to a fair trial (Matter of Fusco v. Moses, 304 N. Y. 424, 433-434; People v. McLaughlin, 291 N. Y. 480, 482-483; Caldwell v. United States, 205 F. 2d 879, 881; Coplon v. United States, 191 F. 2d 749, 757-760, cert. denied 342 H. S. 926; see People v. Cooper, supra, pp. 259-260).
Thus, where in the course of a criminal trial the defendant’s right to confer privately with his counsel has been violated, the trial is vitiated (People v. McLaughlin, supra; Caldwell v. United States, supra; Coplon v. United States, supra; see People v. Cooper, supra). The same rule was applied to set aside a determination of an administrative body where persons accused of corrupt dealings were dismissed after a hearing in the course of which their right to counsel had been denied (Matter of Fusco v. Moses, supra).
*99 Here it is not claimed that the recording will be used in connection with any action or proceeding directed against Lanza — we merely have a legislative investigation and its findings are binding on no one. Lanza’s right to a fair trial is in nowise being impinged upon since there is no trial, present or prospective. None of his property rights is involved. Consequently, the use and disclosure of the communication, unconnected with any proceeding directed against Lanza, as distinguished from the act of recording, is not a basis for an injunction action.
The legislative committee’s hearings here involved are not directed against Lanza but are conducted in furtherance of a legitimate legislative object by express authorization of the Legislature itself pursuant to law. Such power of inquiry is an essential auxiliary to the legislative function (Matter of Joint Legislative Comm. to Investigate State Educ. System [Teachers Union], 285 N. Y. 1, 8; McGrain v. Daugherty, 273 U. S. 135, 174 et seq.).
No contention is made that the information sought to be used is not relevant to this purpose, and in such case the judiciary would be usurping authority if it enjoined the legislative branch of our government, in the exercise of its constitutional functions, from using and making a part of its public record the information from the recording involved here. In Hearst v. Black (87 F. 2d 68) a Senate committee had obtained physical possession of copies of telegrams which had been taken illegally from the telegraph company’s offices. It was sought to restrain the committee “ from keeping the messages or making any use of them or disclosing their contents ”. The court distinguished between the act of illegally seizing the telegrams and their later use and disclosure by the committee, and held that a court of equity has no authority to restrain the latter acts, adding (p. 71) that the universal rule “ is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference ”. (See, also, Nelson v. United, States, 208 F. 2d 505, 513, cert. denied 346 U. S. 827; Barsky v. United States, 167 F. 2d 241, 250, cert. denied 334 U. S. 843; Matter of Joint Legislative Comm. to Investigate State Educ. System [Teachers Union], supra.)
We can find no authority, constitutional or statutory, empowering the courts to enjoin the Legislature in the assumed *100 fact pattern of this case. To claim inherent power here is nothing more than an assumption of power on the part of one branch of the government as against a co-ordinate branch. This we decline to do. The Legislature is as much a guardian of the liberties of the people as are the courts. We will not assume that the legislative committee will disregard its duty toward any individual who may in anywise be referred to in its public hearings. Indeed, we do not know whether the allegations of the complaint are in fact true. The committee has had extended hearings and has taken substantial evidence. It is in a position to determine the underlying facts on which it will base any action it may take. The responsibility for such action is that of the committee and the Legislature.
Accordingly, we hold, that the drastic remedy of injunction does not lie in this case, and that no sufficient cause of action is stated in the complaint. The judgment appealed from should be affirmed, and the appeal from the order denying the temporary injunction should be dismissed.

 The exceedingly broad powers of this committee, consisting of eight members; four members of the Senate and four of the Assembly, will be found in N. Y. Legislative Index (1955, p. 664).