THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GENE SQUITIERI, Appellant.

First Department, November 13, 1975

*Irving Anolik* for appellant.

*Jared J. Scharf* of counsel *(Mario Merola, District Attorney),* for respondent.

CAPOZZOLI, J. This is an appeal by the defendant from a judgment of conviction upon his plea of guilty to the crime of an attempt to receive a bribe. Although a plea of guilty was entered, the question presented on this appeal was preserved and is before us for review.

It is the contention of the defendant that the prosecution violated his Fifth and Sixth Amendment rights of access to and advice from counsel, as provided in the Federal Constitution. He bases this on the claim that the prosecuting authorities deliberately arranged for one Richard Curro, a correction officer under arrest, to surreptitiously record a conference with an attorney, at the attorney's office, which ostensibly was being held for the purpose of securing advice and general counselling from the lawyer for the defendant and Curro who were both involved in the same crime.

In November, 1972, the office of the District Attorney of the Bronx was engaged in an investigation of correction officers on Riker's Island Correctional Facility who were suspected of receiving money from inmates, in return for certain favors and privileges, including release on parole under favorable conditions. The defendant, Squitieri, was a lawyer, employed as a parole officer at Riker's Island, and handled conditional releases of inmates.

As a result of the continuing investigation Curro was arrested on November 10, 1972. He was questioned by the authorities for about 24 hours. He implicated the defendant, Squitieri, and agreed to co-operate with the authorities in securing evidence against the defendant. Accordingly, Curro consented to the placing of a concealed device on his person for the purpose of recording conversations.

After the arrest of Curro, and while he was being questioned, Mrs. Curro contacted the defendant, Squitieri, and informed him what had happened. Defendant instructed Mrs. Curro to inform her husband that Richard Hartman, an attorney and former prosecutor, should be used by Curro as his lawyer. Curro was so advised by Mrs. Curro. The record demonstrates that Curro was arraigned in court, and did give the name of Hartman as his lawyer.

After being informed that Curro had been arrested, the defendant personally contacted the same lawyer, Mr. Hartman, and met him on November 10, 1975, at about midnight. Mr. Hartman, who testified in this case, reported that the defendant spoke to him "in relationship to this Richard Curro

and in relationship to himself, certain aspects of protection of his own rights and certain things". Mr. Hartman further testified that arrangements were made between him and the defendant for both the defendant and Curro to come to his law office on the following day.

This information came to the attention of the authorities and it was in preparation for the conference to be held at Mr. Hartman's office that the authorities placed the recording device on Curro so as to record whatever was being said at the lawyer's office. There is no doubt about the fact that the authorities intended that the conferences which were to be held should be recorded and reported to them. In other words, through the co-operation of Curro the authorities were, in effect, listening in on what was being said between the lawyer and his possible future clients. Surely the fact that the arrangements had not been made to definitely retain Mr. Hartman does not detract from the privileged nature of the preliminary consultation between lawyer and client.

We find it difficult to understand how the court below came to the conclusion that Squitieri was not at the meeting to consult with the lawyer. The fact is clear that the defendant started seeking advice on the prior day, when he saw the lawyer and spoke to him concerning the protection of his rights. Mr. Hartman testified with certainty and without equivocation that he treated the conference on the next day as a professional consultation and had no doubt that he believed the attorney-client relationship existed with both Curro and the defendant for the purposes of free discussion. We do not disagree with the court below that the defendant was anxious to ascertain how much had been told to the authorities concerning his participation in the crimes under investigation, but that did not detract from the lawyer-client relationship. This information would have put the lawyer in a better position to advise both the defendant and Curro as to what their chances were to defend against the prosecution.

Of course, we recognize the importance to the prosecution of the incriminating statements made by the defendant, Squitieri, during this conference, for, without them, there would have been no corroboration of the testimony of Curro, the confessed accomplice. Nevertheless, it does not justify the conduct of the authorities under the circumstances. Their behavior, as disclosed by the evidence, was not only illegal and contrary to precedent, but also a clear deprivation of the

defendant's constitutional rights to counsel, as provided in the Federal Constitution.

In *Lanza v New York State Joint Legis. Comm.* (5 Misc 2d 324, revd 3 AD2d 531, 533) this court said: "Of course, communication between an attorney and his client, especially where the client is a defendant in a criminal matter, involves much more than a mere privilege. Also involved is the right to counsel, which carries with it the corollary right to communicate with counsel in secrecy and confidence, and without intrusion, especially by public officials. In this case that constitutional right was violated, and, indeed, violated in an atrocious and inexcusable manner."

The court then went on to permit the use of the information obtained, in violation of Lanza's rights, by the legislative committee, but went on to say (p 533): "This does not mean, however, that the confidential communications thus obtained may be used against Mr. Lanza in any proceeding in which he is the target." (Citing cases.)

This case went to the Court of Appeals and, by a vote of 4 to 3, with each of the three dissenting Judges writing his own separate opinion, was affirmed (3 NY2d 92). At a later date this very same conversation came up again before the Appellate Division in *Matter of Reuter (Cosentino)* (4 AD2d 252), in an application by the Commissioner of Investigation of New York State to compel the lawyer to testify as to what the conversation was between him and his client. The lawyer refused to testify and the attempt of the commissioner to hold the lawyer in contempt failed. The court, at page 254 of the opinion, said: "The right of the citizen to the advice of a lawyer, and the protection afforded to consultation with him ought to be preserved even though modern electronics has provided a facile way of ascertaining and recording what is said between them * * * and if the constitutional guaranty of the aid of counsel is to be of value, the court must afford to every man the right to talk to his lawyer with assurance that the lawyer will not be required or permitted to disclose what is said."

In *People v Cooper* (307 NY 253, 259–60), the court said: "The right to counsel, based on fundamental principles of justice, is inherent in the concept of a fair trial [citing cases], and included therein, of course, is the right to consult counsel in private, without fear or danger that the People, in a criminal prosecution, will have access to what has been said,

either openly, by forcing the attorney to divulge what he has learned, or secretly, by the use of a concealed recording device or the planting of a human eavesdropper. [Citing cases.] Intrusion upon a client-lawyer conference, whether in the privacy of an office or at the counsel table in court, contravenes our sense of traditional fair play and due process. * * * To cull what was said in *Coplon v United States* * * * 'The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel.' "

In the case of *Matter of Fusco v Moses* (304 NY 424), a bridge officer reported to his superior officer that unused prepaid toll tickets, which had been misappropriated from their owners by truck drivers and others, were being sold to bridge officers at half price, and thenceforth included in the daily toll receipts. Officers retained full money value for the tickets so substituted. The informer was directed to participate, with the other accused bridge officers, in conferences with the lawyer. The impropriety resulted in the court's revoking and annulling the order of the authority dismissing petitioners from their positions as bridge and tunnel officers. At page 433 of the opinion the court said: "any deprivation of the right to counsel and to a fair trial is, in itself, a basis for annulment of a determination resulting therefrom (U. S. Const., 6th Amendt.; N. Y. Const., art. I, § 6; *People v McLaughlin,* 291 N. Y. 480, 482–483, *supra).* Indeed, as to the application of that fundamental rule, it has been said: 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial'."

In *People v Pobliner* (32 NY2d 356, 368–369), the court said: "In summary, the wiretap of attorney-client conversations was highly improper, raising a difficult question whether the indictment should be dismissed."

Again, at page 369 of the court's opinion, there is a note reading as follows: "This court and others have often condemned, without reservation, any intrusion into private communications between counsel and client (e. g., *People v Cooper,* 307 N. Y. 253, 259; *Matter of Fusco v Moses,* 304 N. Y. 424, 433; *Glasser v United States,* 315 U. S. 60, 76; *Coplon v United States,* 191 F. 2d 749, 760 [D. C. Cir.], cert. den. 342 U. S. 926)."

In *People v Cruz* (34 NY2d 362, 369), the court said: "To use, without notice to the defendant, evidence derived from

electronic surveillance is impermissible, even if the surveillance itself is legal. (CPL 700.70.) And surreptitious invasion of the councils of the defense by wiretapping or electronic surveillance may so seriously abridge the constitutional right to the assistance of counsel as to make a fair trial impossible. (See *Hoffa v United States,* 385 US 293, 306–309.)"

In *Coplon v United States* (191 F2d 749, 757), the court said:

"In support of her motion for a new trial, the appellant charged that Bureau agents intercepted telephone conversations between her and her counsel, both before and during her trial in the District of Columbia.

"If this occurred, it was a violation of the appellant's constitutional rights. The Fifth Amendment enjoins that no person be deprived of life, liberty or property without due process of law. Such due process includes the right of one accused of crime to have the effective and substantial aid of counsel. [Citing cases.] Moreover, the Sixth Amendment provides that 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.'

"It is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him."

Later, at page 759, we find: "These cases unequivocally establish the principle that the two Amendments guarantee to persons accused of crime the right privately to consult with counsel both before and during trial. This is a fundamental right which cannot be abridged, interfered with, or impinged upon in any manner. The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel."

We agree with the People's brief that the issue of testimonial privilege, as such, is not involved in this case. The true issue presented at the pretrial suppression hearing was of far greater importance. It was one of constitutional dimension. Therefore, the presence of the wives of Curro and the defendant, at the lawyer's office during the consultation, is not relevant to the resolution of the constitutional issue as to whether the defendant's rights, under the Sixth Amendment of the Federal Constitution, were violated. We do note in passing that the record does indicate that a threat to arrest Mrs. Curro had been made and, further, both wives were

concerned about any possible incrimination of themselves under the tax laws. However, the important point is that the People do not offer, as a reason for opposing the motion for suppression, the fact that the conference was attended by other persons and that confidentiality was waived. Their position is definite and clear. They maintain that there was no legal consultation, no intrusion by the People and, therefore, no violation of constitutional rights of defendant. We strongly disagree. We find that there was a clear, intentional and inexcusable violation of this defendant's rights.

We note the further contention of the People that, even if there existed the relationship of attorney and client, the bathroom portion of the meeting, during which only Curro and defendant were present, should not be suppressed. Again we disagree. The conduct of the People was so inherently violative of the fundamental constitutional rights of this defendant that they should not be allowed to bolster the People's case by making any use of any portion of what was said during this professional conference.

All in all, the conduct of the authorities in this case was contrary to law and cannot be condoned. The language of Presiding Justice STEVENS, sitting at Special Term, in *Lanza v New York State Joint Legis. Comm.* (5 Misc 2d 324, 328, *supra)* is particularly applicable. "The use of such a subterfuge is unworthy of the sovereign."

Therefore, the judgment should be reversed, on the law and on the facts, the motion to suppress granted and the case remanded for further proceedings.

MARKEWICH, J. P., KUPFERMAN, TILZER and NUNEZ, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on July 18, 1974, unanimously reversed, on the law and on the facts, the motion to suppress granted and the case remanded for further proceedings.