Simons, J.
(dissenting). The narrow issue in this appeal is whether an agency of the State violates constitutional guarantees of due process of law when it takes a citizen’s property without hearing him, knowing he wishes to be heard but cannot, because another agency of the State prevents him *762 from appearing. The majority says it does not. I agree with the courts below that it does and, therefore, I dissent.
The facts are not in dispute. Petitioner was indicted and tried for manslaughter, second degree, for the October 13, 1979 stabbing death of his wife. On July 23, 1980 he was acquitted by reason of mental disease or defect and committed to the care of the Commissioner of Mental Hygiene. He remained hospitalized until December 2, 1983. At the time of the homicide, petitioner was employed as a token clerk by the Transit Authority with permanent status. As such he had a property right to his employment which could not be taken from him without due process of law (Matter of Economico v Village of Pelham, 50 NY2d 120, 125; Matter of Simpson v Wolansky, 38 NY2d 391; see, Board of Regents v Roth, 408 US 564). Thus, on January 5, 1982, some 18 months after the conclusion of the criminal trial, the Transit Authority instituted disciplinary proceedings to terminate his employment by mailing notice of the charges to petitioner at South Beach Psychiatric Center, where he was confined, and ordering him to appear at a hearing to be held on January 21, 1982. Petitioner responded that the Center would not permit him to leave but that his father, who was not a lawyer, would appear on his behalf. The Authority also sent a notice to the hospital and petitioner’s physician advised it that petitioner could not leave the hospital grounds. The hearing was adjourned three times, until May 27, 1982 when the Hearing Officer proceeded with the hearing in petitioner’s absence. No witnesses were called; instead, a copy of the transcript of the criminal trial was received in evidence and the authority rested. The Hearing Officer stated that he would hold the record open "until about June 15, 1982” in the event petitioner was released. More than two years later, in July 1984, the Authority adopted the Hearing Officer’s recommendation and removed petitioner from his job. Petitioner claims that termination without giving him an opportunity to be heard violated his constitutional rights to due process of law.
Due process is not a static concept and its extent varies depending on a variety of considerations. Generally, three distinct factors are considered: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal *763 and administrative burdens the additional or substitute procedural requirements would entail” (Mathews v Eldridge, 424 US 319, 335; see also, Arnett v Kennedy, 416 US 134). The Legislature has determined, by enacting Civil Service Law §75, that these considerations entitle permanent public employees to be heard before they are disciplined or their employment terminated. The procedure set forth in the statute requires that employees be given notice of the charges and an opportunity to contest them, the power to summon witnesses in their behalf and the right to be assisted by counsel or an union representative at the disciplinary hearing (Civil Service Law § 75 [2]).
The majority does not deny petitioner was entitled to be heard, but it finds appropriate the procedure the Authority followed in this case. Applying the Mathews factors on an ad hoc basis, it holds respondents cannot be faulted because the Authority adjourned the hearing three times, it was not clear petitioner would be able to appear in the foreseeable future and because it held the Hearing Officer's recommendation for three months so petitioner could move to reopen upon his release. More importantly, however, addressing the second and third Mathews factors, it finds the case for petitioner’s removal conclusive because the facts had been established at the criminal trial, and petitioner offered no exculpatory evidence to contradict those facts, and the burden on the agency by further delay justified its actions. I do not find these reasons persuasive.
A due process right to be heard requires an opportunity to be heard "at a meaningful time and in a meaningful manner” (Armstrong v Manzo, 380 US 545, 552). The opportunity provided petitioner was not "meaningful” within the spirit of the Constitution. Indeed, the Authority made little effort to hear his side of the case although it was fully informed of petitioner’s desire to attend and his inability to do so. Petitioner responded to the notice of hearing by promptly writing the Authority, stating his desire to appear and noting that he was unable to do so. He arranged for his father to attend the hearing, and his father told the Hearing Officer that petitioner desired to appear and present his side of the story. Petitioner continued to preserve this position by insuring that someone appeared on his behalf on each adjourned date. His good faith in requesting further adjournments, based on his doctors’ advice that he would soon be able to participate, is *764 unquestioned (cf., Gerber v New York City Hous. Auth., 42 NY2d 162).
Knowing of pétitioner’s concern and of his confinement the Authority nevertheless decided to proceed in petitioner’s absence without advising him that further adjournments would not be granted, requesting that he submit a written statement in response* or appear by counsel. Nor did the Authority explore alternative means to protect petitioner’s rights such as inquiring whether South Beach Psychiatric Center would permit petitioner to leave the hospital, under escort, for the limited purpose of attending the hearing or holding the hearing at the hospital — located in the same city as the Authority’s office — as was done in Matter of Sims v Monaghan (307 NY 637). Manifestly, holding the hearing at South Beach would not have inconvenienced any witnesses, because there were none. The only evidence the Authority considered was the transcript of petitioner’s criminal trial. The Authority’s position is no better because it left the record open for three weeks "in the event [petitioner] or his father wish[ed] to reopen the case”. Petitioner was not notified of this, and apparently his father was not either. Under those circumstances, I cannot agree with the majority that the procedure followed by the Authority was appropriate.
Nor do I agree with the contention that petitioner’s presence at the hearing was unnecessary because misconduct had been conclusively established at the criminal trial. Before acting, the Authority had the burden of establishing two things — whether petitioner was chargeable with misconduct and, if so, the appropriate penalty (see, Civil Service Law § 75). Although it could have based a determination of misconduct on the findings of the criminal court (see, Matter of Brockman v Skidmore, 39 NY2d 1045; see also, Villanueva v Simpson, 69 NY2d 1034), it was not bound by them. It clearly had discretion to find petitioner not responsible and to impose a lesser sanction than removal. But whether it chose to do so or not, petitioner was entitled to be heard before these questions were resolved so that he could attempt to show that he was not responsible for killing his wife, as the criminal jury had found, that any sickness or disability he suffered had been removed and that he was, as his doctors’ attested, able to return to *765 work. The result after hearing him may have been the same but we held long ago — and that holding has never been in question until today — that when one claims he has been denied due process of law, he does not first have to prove that he has a meritorious defense (Matter of Hecht v Monaghan, 307 NY 461). We noted there that " '[t]o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits’ ” (id., at 470, quoting from Coe v Armour Fertilizer Works, 237 US 413, 424). That view was repeated in our statement in Matter of Papasidero v Fasano (19 NY2d 440, 442) that "[statutes requiring hearings in civil service removals do not depend for their operative effect on good grounds shown to resist the removal. They are operative without regard to the merits; and since the statute here clearly entitled petitioner to a hearing, he should have been given one before he was removed” (see also, Matter of Fusco v Moses, 200 Misc 196, affd 279 App Div 737, affd 304 NY 424). Nor is it of any consequence that a court, on review, would have deferred to the Authority’s findings and sanction in this case if imposed after a hearing. As we have noted in a similar context, it is precisely because administrative determinations are subject to judicial deference that "it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded” (Matter of Goldfinger v Lisker, 68 NY2d 225, 230 [arbitration]).
Finally, the Authority’s action cannot be justified by the burden or inconvenience imposed on it. I agree that public agencies are constrained to move expeditiously, to maintain staff and avoid unnecessary expense. But the record makes clear that any burden resulting from delay in this case was self-imposed. Even if the Authority chose to await the outcome of the criminal proceedings, it could have scheduled the hearing as soon as petitioner’s trial was over. It did not do so but waited an additional 18 months before commencing this proceeding and then over two years more after the Hearing Officer closed the hearing and issued his recommendation of dismissal before terminating petitioner’s employment. Under the circumstances, the Authority’s claim that it could not wait beyond May 27 to hear petitioner’s side of the story, particularly when it failed to take any effort to accommodate petitioner’s known difficulties, is entitled to little consideration.
There is no question of what constitutional due process, as *766 implemented by the statute, required in this case and petitioner was denied it. Any governmental violation of a citizen’s due process rights is inexcusable but the violation is intolerable when one agency of government, knowing the citizen’s predicament, proceeds by default and strips him of his property while another agency of government confines him so that he cannot protect his rights. Accordingly, I dissent and vote to affirm.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur in memorandum; Judge Simons dissents and votes to affirm in an opinion.
Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

 Although the notice originally sent petitioner did notify him of the right to respond to the charges in writing, it also "ordered petitioner to attend the hearing under penalty of insubordination”. The inference is unmistakable: his absence would severely prejudice his case.