Hebbebt B. Evans, J.
This is a motion by defendant for an order pursuant to GPL 210.20 (subd. 1, pars, [a], [c]), 210.25 (subd. 2) and 210.35 (subd. 1) dismissing the indictment issued against the defendant on the grounds that the Grand Jury which issued it was improperly constituted, and for an order pursuant to GPL 210.20 (subd. 4) directing that if the People resubmit the charges, that such resubmission be to a new Grand Jury empanelled without regard for section 598 of the Judiciary Law.
The defendant is a bridge tender who was indicted on July 27, 1971 under section 145.20 of the Penal Law for his actions in opening a drawbridge within Bronx County during á labor action on June 7,1971.
Defendant argues that section 598 of the Judiciary Law is constitutionally offensive. That section reads, insofar as applicable, as follows: ‘1 Each of the following officers is disqualified to serve as a juror: * * * No public officer or employee of the United States government, or of any state, city, or municipality, or of any political subdivision of any of them, or of any official board, authority, council, commission, corporation, or other agency of any of them, receiving annual compensation in excess of one thousand dollars from the aforesaid sources, shall serve on any grand jury.”
Historically, the Grand Jury came down to us as part of the common law, its object was to secure to the subject the right to appeal to his peers under the immunity of secrecy before having to stand trial, and arose out of the conflict between the rights of the subject and the power of the State. United States v. Olmstead (7 F. 2d 756, 758) made clear its status and function: “ It is a distinct, independent body, and must act free from influence, fear, favor, affection, reward, or hope * * * the Constitution of the United States, as well as the constitution of all the states, show it is adopted as a means of protection to the citizens as well as a necessary aid to public justice.”
The section of the Judiciary Law which defendant seeks to attack was enacted in 1940 based upon the recommendation of the Judicial Council. The council’s recommendations were a product of several years of deliberation and study as reflected in the Sixth Annual Report of the Judicial Council. The council’s comments to the then proposed section 598 states its purpose as follows (Sixth Annual Report of N. Y. Judicial Council, *511 1940, p. 208): “ The last paragraph was recommended hy the Grand Jury Association of New York County, on the ground that, although it is the practice not to place such persons on grand juries, specific provision to that effect should be included in the law because of the quasi-judicial, quasi-prosecuting character of the grand juries when investigating official corruption.”
Defendant’s counsel’s memorandum in support of his motion is that: (1) The exclusions of section 598 are without rational foundation; (2) That the presumption of bias created by section 598 violates due process; and (3) That the indictment by a jury which excludes a sizeable segment of the community violates the Fourteenth Amendment right to an “ impartial jury ” drawn from a “ cross-section of the community ”. Parenthetically, counsel in a supplementary affirmation citing the court’s action in People v. Attica Bros. (79 Misc 2d 492) makes so tenuous and unsubstantiated an allusion to the exclusion of women from juries in Bronx County that it is doubtful if he intended it, based upon hearsay as it is, to be at issue in the instant matter. From the court’s personal involvement and knowledge of the selection of Grand Juries in Bronx County, we find this contention not to be the fact.
In matters involving a challenge for constitutionality, to the party raising such question falls the onus of proving the same. As was said in Fenster v. Leary (20 N Y 2d 309, 314): “ it must be observed that a strong presumption of validity attaches to statutes and that the burden of proving invalidity is upon those who challenge their constitutionality to establish this beyond a reasonable doubt ”.
Defendant contends that the exclusion of section 598 of the Judiciary Law is without rational basis. What then is the test of reasonableness? Clearly, we cannot ignore as arbitrary the efforts and study of the Judicial Council nor those of the Grand Jury Association. Their efforts were devoted to the satisfaction of a compelling State interest; no other motive is apparent or can be inferred. United States ex rel. Epton v. Nenna (318 F. Supp. 899, 904) touches upon the limitation in question by stating that section 598 of the New York Judiciary Law disqualifies for jury service not only broad categories of elected and appointed officials in high office, but any State or Federal employee, receiving annual compensation in excess of $1,000 and continues: ‘ ‘ Whether or not this is wise or essential, rational people could surely entertain the broad underlying premise that those dependent upon government for substantial income might be unsuitably conflicted if they served as jurors.” *512 And at page 903: “ This court need not * * * applaud the wisdom of this exclusion to sustain its constitutionality.” The court held in Matter of Van Berkel v. Power (16 N Y 2d 37, 40) in commenting on the validity of legislative enactment: “ This presumption is accompanied by another as to the statute: that the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation.” To succeed as to reasonableness, the defendant must prove that the Legislature did not investigate and find a situation calling out for the type of limitation enacted.
Defendant raises the question of bias implied by exclusion. The exclusion of government employees does not constitute an irrebutable presumption that these employees are biased once we establish a rational basis for the statute. The disqualification is no more presumptive of bias than the exclusion of the other officers mentioned, who certainly have the same capacity for independent judgment as the employees excluded. Historically as the jury selection process developed here it became necessary for a variety of reasons, to exclude certain groups. The test here would be whether a rational basis had been established and whether the exclusion was applied evenly to all those similarly circumstanced. Defendant relies upon Dunn v. Blumstein (405 U. S. 330), in support of his thesis that the presumption of constitutionality of a statute must give way when .challenged and the burden of proof shouldered by the State as to a compelling State interest. However, a complete reading of the opinion has the court stating (p. 337): “ But, if it was not clear then, it is certainly clear now that a more exacting test is required for any statute that ‘ place [s] a condition on the exercise of the right to vote ’.” Hardly a case on all fours with the one that confronts us now.
Lastly, defendant urges that the exclusion complained of' deprives him of an “ impartial jury ” drawn from a “ cross-section of the community ” is the type of constitutional infirmity sufficient to abridge his rights under the Fourteenth Amendment. At first blush it would appear to fly in the face of judicial convention to suggest that a Grand Jury need not be impartial; however, respondent’s memo suggests exactly that and directs our attention to the rather positive language contained in Gorin v. United States (313 F. 2d 641, 645) when the appellants presupposed a constitutional right to be indicted by a Grand Jury free of government instigated prejudice and the court said: “ They must also ‘ presuppose ’ that they do not need to show that in fact the grand jury which indicted them did not perform *513 its sworn duty to act with impartiality hut instead was actuated by government-inspired bias and prejudice. We are not prepared to grant these ‘ presuppositions So far as we are aware, none has the sanction of any decision of the Supreme Court of the United States and all have been rejected in one or another carefully considered opinion of a lower federal court.”
Peters v. Kiff (407 U. S. 493), relied upon by movant to show exclusion of a class, involved systematic and arbitrary exclusion of a whole race of people. Justice Mabshall wrote (p. 502): “ a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. ” The test would seem to be, according to the learned Justice, whether or not the exclusion was arbitrary and discriminatory.
In Gorin v. United States (313 F. 2d 641, 644, supra) in commenting upon the phrase “ cross-section of the community ”, the court said: “ The argument rests upon too literal a reading of the phrase quoted above, for it has never been the law that a jury must represent a true cross-section of the community. See Beport of the Committee on the operation of the Jury System to the Judicial Conference of the United States, September 1962 at page 6. Certain groups * * * are and time out of mind have been exempted from jury duty, some for the general public interest * * * and others * * * for the effective operation of the jury system.”
More recently and in conclusion, Neale v. Hayduk (35 N Y 2d 182, 186) in quoting from Matter of Dorn “ HH ” v. Lawrence “ II ” (31 N Y 2d 154, 158): “ It is fundamental, of course, that the Legislature may classify persons for purposes of legislation without infringement of the equal protection guarantee and that its discretion in this regard is broad and will not be disturbed if any state of facts can reasonably be conceived to sustain its classification * * * or even if the classification be fairly debatable * * * provided only it shall not be palpably arbitrary (New York ex rel. Bryant v. Zimmerman, 276 U. S. 63).”
Accordingly, this motion is denied.