THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL SICILIANO, VICTOR ECHAVARRY, JR., and DANIEL GIBSON, Appellants.

First Department, June 10, 1976

*Charles G. Moerdler* of counsel *(Henry J. Silberberg, Alan Kolod* and *Irving Anolik* with him on the brief; *Morris Weissberg,* attorney), for appellants.

*Stephen R. Bookin* of counsel *(Mario Merola, District Attorney),* for respondent.

BIRNS, J. I agree that defendants by their plea of guilty as disclosed by the record in this case did not waive a possible challenge to the constitutionality of section 598 of the Judiciary Law. I further concur in the carefully considered opinion of Justice LUPIANO that section 598 of the Judiciary Law does have a rational basis, and, accordingly, does withstand the constitutional challenge raised by the defendants.

I do not agree, however, that a hearing is warranted on the methods used to impanel the Grand Jury which in 1972 returned the indictments before us. There is no support in the record for the statements attributed to the County Clerk of Bronx County that "it was the custom and practice in Bronx County systematically and intentionally to mail qualification notices to prospective jurors based upon a fixed mathematical formula which specifically discriminated against women in that a substantially greater number of such qualification notices were sent to men than to women with the result that substantially more men than women were qualified for service".

In fact, when this claim was first recited in the Bronx County Supreme Court, Trial Term characterized it as "tenuous and unsubstantiated," and based upon "hearsay," and found it "not to be the fact." *(People v Echavarry,* 79 Misc 2d 509, 511.)

Although as Justice LUPIANO observes, it appears that on a motion for reargument that the District Attorney of Bronx County "stipulated" that "the County Clerk in Bronx County engaged in the same administrative practice at the time of our indictments as that followed in New York County at the time of the *Feinstein* indictment, to wit, summoning fewer women than men for jury qualification" that stipulation by its terms cannot be equated with a practice of "systematic exclusion and discrimination" sufficient to make a factual showing that the Grand Jury herein was constituted illegally.

In the absence of a constitutional claim which may in some instance survive a plea of guilty *(Menna v New York,* 423 US 61), the right to appeal following a guilty plea is governed by statute (see, for example, CPL, 710.70, subd 2; CPL 450.30). We should not extend ourselves to decide constitutional issues unless the record contains persuasive evidence which would mandate judicial inquiry.

To reach out for remote issues of constitutional law on the basis of mere allegation not only prevents the termination of a criminal action, but permits the beginning of a new appellate process (see *People v Giuliano,* 52 AD2d 240). After all, a plea of guilty, ordinarily, is designed to prevent regenerated litigation.

For the foregoing reasons, the judgment below should be affirmed.

MARKEWICH and CAPOZZOLI, JJ. (concurring). We concur in the separate opinion of Justice BIRNS and, therefore, in the result, except insofar as it holds that defendant-appellants did not, by their pleas of guilty, waive any infirmity in the procedures theretofore had. The minutes of the plea contain no indication whatever that any so-called reservation of the right to appeal was made; the plea was unconditional.

LUPIANO, J. (concurring in part and dissenting in part). On June 7, 1971, a job action involving certain municipal employees occurred in the City of New York. Defendants, members of Local 237 of the International Brotherhood of Teamsters, a striking union, were employed by the City of New York as bridge tenders. Each was responsible for the opening and closing of a particular drawbridge in Bronx County, which bridges are links in major arteries for vehicular traffic and span a navigable body of water. In furtherance of a plan conceived by the union to maximize disruption during the strike, each defendant on the day set forth above, opened his bridge, removed certain electrical equipment so that the bridge could not be closed and left his post. The predictable chaotic effect on vehicular traffic resulted.

Subsequently, defendants were indicted by the Bronx County Grand Jury, which indictments contained three counts charging that defendants' actions as outlined above constituted criminal tampering (a class D felony under Penal Law, § 145.20), obstruction of governmental administration (a class A misdemeanor under Penal Law, § 195.05) and official mis-

conduct (a class A misdemeanor under Penal Law, § 195.00).[1] Pertinent to our inquiry is the fact that during subsequent judicial proceedings, defendants challenged the validity of the indictments upon the ground that the indicting Grand Jury was unconstitutionally constituted and, hence, abridged defendants' due process and equal protection guarantees under the Fourteenth Amendment to the Constitution of the United States and sections 6 and 11 of article I of the Constitution of the State of New York. The prime thrust of this challenge was based on the alleged unconstitutionality of section 598 of the Judiciary Law and the purported exclusionary practice involving the systematic and intentional mailing of qualification notices to prospective jurors in Bronx County based on a fixed formula which specifically discriminated on sexual grounds in that a substantially greater number of such qualification notices were deliberately sent to men than to women, with the result that substantially more men than women were qualified for service. This challenge was rejected by Trial Term *(People v Echavarry,* 79 Misc 2d 509). Defendants then sought to effectuate this challenge by way of an article 78 writ of prohibition. The People moved to dismiss on the ground of prematurity, to wit, that the constitutional issues presented were not ripe for review until after entry of judgment. The application was denied and defendants' petition dismissed by this court *(Matter of Siciliano v Justices of Supreme Court,* 46 AD2d 858). The Court of Appeals denied leave to appeal from our determination on the ground that the remedy sought was unavailable, citing *Matter of Roberts v County Ct. of Wyoming County,* (34 NY2d 246) which holds that prohibition does not ordinarily lie if there is an adequate remedy by way of appeal from a judgment *(Matter of Siciliano v Justices of Supreme Court,* 35 NY2d 990). Thereafter, Trial Term permitted renewal of defendants' motion challenging the indictments and upon such renewal, the court adhered to its prior determination. At this juncture, defendants on the advice of counsel apparently agreed that the proceedings would be resolved at the trial level by the entry of guilty pleas solely to misdemeanor charges, with defendants' constitutional challenges being purportedly preserved and thus ripened for appellate review.

At the outset we must consider the defendants' contention

---

1. Though not material here, it should be noted that the third count of official misconduct of each indictment was later suspended to correct pleading defects.

that the indictments are invalid in that the underlying wrong was not actionable under the Federal supremacy doctrine. Section 499 of title 33 of the United States Code provides, in pertinent part: "It shall be the duty of all persons owning, operating, and tending the drawbridges * * * built across the navigable rivers and other waters of the United States, *to open, or cause to be opened,* the draws of such bridges under such rules and regulations as in the opinion of the Secretary of Transportation the public interests require to govern the opening of drawbridges for the passage of vessels and other water crafts, and such rules and regulations, when so made and published, shall have the force of law. Every such person who shall willfully fail or refuse *to open, or cause to be opened,* the draw of any such bridge for the passage of a boat or boats * * * shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than $2,000 nor less than $1,000, or by imprisonment (in the case of a natural person) for not exceeding one year, or both such fine and imprisonment, in the discretion of the court" (emphasis supplied).

Defendants concededly walked off their job after first opening the three bridges. As they intended to leave their posts for the day, with the consequence that the bridges would be unattended by them in dereliction of their duty, the bridges unopened would of necessity obstruct water traffic. Thus, defendants take solace in the above statute, contending that the opening of the bridges by them was mandated by Federal law. This simple act, namely, the opening of the bridge, taken out of context, serves as the basis for the defendants' convoluted rationale that the State and municipal jurisdiction has been pre-empted by Federal jurisdiction. Essentially defendants argue that though their action was disruptive of surface traffic, the Congress constitutionally determined the priority of unobstructed watercraft passage and its judgment must prevail under the Supremacy Clause (US Const, art VI, cl 2). Thus they conclude that the State penal statutes here invoked to punish their action must give way under the supremacy doctrine. Viewing the circumstances of defendants' conduct on a pragmatic basis, the opening of the bridges was only part of a series of acts which only incidentally resulted in the *avoidance* of a violation of Federal law. The purpose of a bridge, relevant to this analysis, is to afford convenient passage over a river and a drawbridge over a navigable river fulfills two

functions, namely, to afford such passage over the river, but *also* to enable watercraft to navigate freely on the waterway, that is, to pass unobstructed by the bridge. Clearly, then, Congress is concerned solely with the latter function of a drawbridge. To illustrate the obvious, a drawbridge fixed permanently in an open position ceases to be a bridge.

Section 499 of title 33 of the United States Code by its terms recognizes the purposes of a drawbridge and places responsibility upon those operating such facilities. The State Penal Law section which defendants have been convicted of violating is not in conflict with the Federal statute. Patently, the Federal statute seeks to proscribe the willful failure, refusal or neglect to open draws of bridges across navigable waters, while the State penal statutes proscribe tampering with bridges with intent to cause a substantial interruption and impairment of services rendered to the public and effecting that result. Federal law will not displace a State's exercise of police power, unless there is a clear and manifest purpose by Congress, where otherwise proper, to do so. In the Federal statute at issue there is no explicit statement of congressional intent to pre-empt State power to regulate drawbridges over navigable waters. In the absence of such specific statement, the statutory rule is that "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained" *(Florida Avocado Growers v Paul,* 373 US 132, 142). Applying this rule to the instant matter, we view the defendants' argument that the State and city are pre-empted from enacting reasonable regulations consonant with the direction to open the draws of drawbridges and, at the same time, to insure proper operation to serve the public in utilizing the bridge for passage over the waterway, as specious. The statutes at issue herein, both Federal and State coexist for necessary purpose. There is no conflict.

Before considering the defendants' claims that the Grand Jury which indicted them was unconstitutionally selected, it is necessary to resolve the issue whether their voluntary pleas of guilty to the crime of obstructing governmental administration, entered on the advice of competent counsel, foreclose such inquiry. Study of the record discloses that at sentencing, defense counsel pointed out that the constitutionality of the

indicting Grand Jury had been challenged by timely motions *prior* to the guilty pleas, that defendants, pursuant to an understanding between the parties, "reserved [their] rights with respect to" such challenges and that defendants intended to appeal and thus resolve the "intriguing questions" posed by such constitutional issue. Examination of the pleading minutes (not made part of the record herein) discloses no express reservation by the defendants of their claim that the indicting Grand Jury was unconstitutionally selected. However, the exhaustive effort by defendants prior to their guilty pleas to secure review of their claim that the Grand Jury which indicted them was unconstitutionally selected, viewed against the statements by defense counsel outlined above, negates the People's argument that the entry of the guilty pleas effected as a necessary consequence, a waiver of such claim.[2] Defendants persuasively urge that as they never disputed the fact that they opened the bridges, their determination to plead guilty was motivated by a desire to avoid burdening (by a needless trial) the State, while at the same time preserving appellate rights.[3] Obviously, defendants at the time of sentenc-

---

2. Reading of the sentencing minutes further discloses that defense counsel addressed the fact that in *People v Feinstein,* (Indictment No. 858-1072) where the president of the Bridgetenders Union was similarly indicted and the same constitutional challenge to the Grand Jury selection process raised, the indictment was dismissed in the Supreme Court, New York County. Alluding to the divergence of result between the New York County disposition and the Bronx County disposition, counsel declared: "We have an unusual situation in which the president of a union has met one fate, namely, his indictment was dismissed, and those that were in the union, who were members * * * [I]t would be inappropriate * * * for these gentlemen to meet a fate so starkly contrasted to what has happened in New York County." Counsel also declared that his observation was to illustrate the propriety of "preservation of rights" of the three defendants.

3. In their reply brief, defendants-appellants aver that initially these proceedings in Bronx County were co-ordinated with the New York County proceedings in *People v Feinstein.* They state that "[t]he pleas herein were entered at a time when it appeared likely that the companion New York County indictment in *Feinstein* would be dismissed * * * based on the same sex discrimination challenge which is at issue herein * * * [Trial Term in Bronx County] had denied dismissal of the Bronx cases * * * *before* the New York County decision was handed down. Hence, in or about September, 1975, it was agreed that * * * the Bronx cases would be the subject of a plea coupled with a reservation and that the Bronx cases would be held in abeyance for all purposes (including sentencing) until the New York County decision was rendered and a determination then was made in New York County as to reindictment, discharge and the like. Only when the New York County proceedings were finally laid to rest in or about February 1976, were the Bronx trial court proceedings then concluded and the record made as noted above and in accordance with the formula employed (by the same counsel) in *People v. Squitieri,* 49 A.D.2d 374 (1st Dept., 1975)".

ing were aware of the dismissal of a similar indictment against their union's president predicated on the same "job action" which dismissal had its inception in the constitutional challenge to the indicting Grand Jury.[4] The *nature* of the constitutional challenge urged by the defendants is such that even in the absence of any express reservation of same at the time of entering the guilty pleas, the constitutional violations complained of were not rendered irrelevant or "waived". It is beyond cavil that such challenge was *timely* raised *prior* to the entry of the guilty pleas. To frustrate defendants' persistent efforts to secure appellate review of these constitutional issues especially in the unique circumstances presented, by resort to supertechnical analysis, would not serve the interest of justice.

*Tollett v Henderson* (411 US 258), which is urged in support of the contention that defendants' guilty plea precludes appellate review of the constitutional issues advanced by them, upon close study, warrants the conclusion that defendants are entitled to such review at this point. In that case a defendant indicted for first degree murder in Tennessee pleaded guilty on the advice of counsel and was sentenced to a term of 99 years in prison. Some 25 years later, he urged by way of habeas corpus proceedings that he was deprived of his constitutional right because Negroes had been excluded from the Grand Jury which indicted him. The highest State appellate court ruled he waived his claim by his failure to raise it before pleading to the indictment and by pleading guilty. The

---

4. In *People v Feinstein,* Trial Term in New York County entertained a motion by defendant Feinstein to dismiss the indictment. The court refused to dismiss in the furtherance of justice, but on the challenge to the constitutionality of the Grand Jury which indicted Feinstein, observed: "Defendant's final point is that regardless of the statutory scheme, women were, in fact, excluded from the grand jury which indicted the defendant by the actions of the County Clerk, Norman Goodman, who sent out more qualification notices for jury (and ultimately grand jury) service to men than women. An affidavit admitting and explaining such procedures has been submitted to the court by Mr. Goodman. The District Attorney, in his papers, concedes that such procedure may well be improper and to avoid an additional appellate issue in this case has consented to a dismissal of the indictment and requests leave to resubmit these charges to another grand jury * * * Therefore, in view of the District Attorney's consent to dismiss and since it is not the evidence presented to the grand jury, but rather the apparently defective procedures in summoning that body, which is the basis of the dismissal, this court feels that the interests of justice would require it to exercise its discretion in fault of the District Attorney's application to resubmit and authorizes the People to resubmit these charges to another grand jury within sixty days. If such resubmission is not made within such time, the motion to dismiss is final" *(People v Feinstein,* NYLJ, Nov. 18, 1975, p 6, col 6 [Sup Ct, NY County]).

Federal District Court and Court of Appeals focused on the issue of waiver and held there was no waiver because there was no relinquishment of a *known* right, that is, defendant was unaware of the constitutional defect at the time of pleading. The United States Supreme Court in granting certiorari framed the issue on a narrow basis: "whether a state prisoner, pleading guilty *with the advice of counsel,* may later obtain release through federal habeas corpus by proving *only* that the indictment to which he pleaded was returned by an unconstitutionally selected grand jury" *(Tollett v Henderson, supra,* p 260; emphasis supplied). Of critical import was the court's observations that defense counsel's "major effort appears to have been to arrange a form of plea bargaining, whereby [defendant] would plead guilty to the murder charge" and that defendant's assertion of systematic exclusion of Negroes "was made *for the first time* many years *after* he had pleaded guilty to the offense for which he was indicted by the grand jury" *(Tollett v Henderson, supra,* pp 261-262; emphasis supplied). Thus, the court proceeded to focus on the adequacy of legal representation, declaring: "Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law * * *. In order to obtain his release on federal habeas under these circumstances, [defendant] must not only establish the unconstitutional discrimination in selection of grand jurors, he must *also* establish that his attorney's advice to plead guilty without having made inquiry into the composition of the grand jury rendered that advice outside the 'range of competence demanded of attorneys in criminal cases'" *(Tollett v Henderson, supra,* p 268; emphasis supplied). In light of the *pre-plea* constitutional challenges in the instant matter and the necessary relevance of such challenge to defense counsels' advice and representation of their client's interests, it is quite clear that the *Tollett* rationale is supportive of defendants' contention that the constitutional issues are now ripe and have been preserved for appellate review. A contrary conclusion would exalt form over substance and constitute a myopic view of the relevant circumstances.

*People v Chirieleison* (3 NY2d 170) further supports our determination that defendants have not waived their constitutional challenge by pleading guilty. In that case, the defendant's motion to dismiss the indictment on the ground that he

had been denied his right to a speedy trial was denied and his appeal from such order of denial was dismissed by the Appellate Division on the basis that the order was intermediate in nature and not appealable. Subsequently, defendant pleaded guilty and on appeal from the judgment of conviction brought up for review the order denying his motion to dismiss. The People argued that the guilty plea effected a waiver of this claim. Judge FULD (later Chief Judge) declared for the unanimous court (pp 173-174): "When that appeal was dismissed upon grounds of nonfinality, the defendant could, of course, have stood trial—and, if he had, the district attorney recognizes, the 'defense' of waiver could not have been interposed and the defendant would have been in a position (had he been convicted) to obtain a reversal of the order denying his motion to dismiss. The plea was, of course, a voluntary one, but, in the light of all the circumstances, it may not be said that defendant's conduct spelled out a waiver. We cannot agree that acceptance of the plea to a misdemeanor was 'an expression of happy relief on [defendant's] part at being able to avoid even the chance of conviction for the greater crime' or that the defendant received 'a *quid pro quo* which satisfied him.' On the contrary, defense counsel may well have reasoned, as his subsequent action indicated, that the defendant, by pleading guilty, was accorded an opportunity of having the appellate courts pass upon the motion to dismiss, without subjecting him to the risk of the heavy sentence that might have followed a trial and a conviction for first degree robbery."

In *Menna v New York* (423 US 61), the United States Supreme Court held that a defendant's double jeopardy claim is not barred by a guilty plea. In footnote 2 to its *Per Curiam,* the court stated: "Neither *Tollett v Henderson,* 411 U.S. 258 (1973), nor our earlier cases on which it relied, *e.g., Brady v United States,* 397 U.S. 742, and *McMann v Richardson,* 397 U.S. 759 (1970), stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations * * * [I]n *Tollett,* we emphasized that waiver was not the basic ingredient of this line of cases, 411 U.S., at 266. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea,

therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." The constitutional challenge to the indicting Grand Jury is properly before us for review and will now be considered.

In each of these appeals it is averred that section 598 of the Judiciary Law is unconstitutional insofar as it provides that "[n]o public officer or employee of the United States government, or of any state, city, or municipality, or of any political subdivision of any of them, or of any official board, authority, council, commission, corporation, or other agency of any of them, receiving annual compensation in excess of one thousand dollars from the aforesaid sources, shall serve on any grand jury." It is initially noted that public employees are excused from Grand Jury service *only* and not from petit jury service.[5] "Under traditional equal protection [14th Amdt.] principles, a State retains broad discretion to classify as long as its classification has a reasonable basis" *(Graham v Richardson,* 403 US 365, 371). Classifications based on sex,[6] nationality,[7] alienage,[8] and race[9] are *inherently suspect* and subject to close judicial scrutiny. It has also been noted that the equal protection clause requires that a statutory classification bear some rational relationship to a legitimate State purpose and that "when state statutory classifications approach sensitive and fundamental personal rights, [the] Court exercises a stricter scrutiny" *(Weber v Aetna Cas. & Sur. Co.,* 406 US 164, 172). The inquiry, therefore, must focus on what legitimate State interest is sought to be promoted by the classification and what fundamental personal right might be endangered by the classification. The classification embodied in section 598 of the Judiciary Law is not inherently suspect. CPL 190.05 provides, in part, that the functions of a Grand Jury are "to hear and examine evidence concerning offenses *and concerning misconduct, nonfeasance and neglect in public office,* whether criminal or otherwise, and to take action with respect

---

5. Further, in respect of Grand Jury service not all public employees are excluded. Only those receiving compensation in excess of $1,000 are excluded.

6. *Frontiero v Richardson,* 411 US 677.

7. See *Oyama v California,* 332 US 633, 644-646.

8. *United States v Carolene Prods. Co.,* 304 US 144, 152-153, n 4; *Takahashi v Fish & Game Comm.,* 334 US 410, 420; *Graham v Richardson,* 403 US 365.

9. *McLaughlin v Florida,* 379 US 184, 191-192; *Loving v Virginia,* 388 US 1, 9.

to such evidence as provided in section 190.60" (emphasis supplied). The specific direction to make inquiry into "misconduct, nonfeasance and neglect in public office", one of the principal functions of the Grand Jury is quite relevant to consideration of whether section 598 of the Judiciary Law is subject to constitutional infirmity as urged by appellants.

The basic duty of a Grand Jury is to accuse or to exonerate in a proper case, and a Grand Jury proceeding is an *investigation* rather than a prosecution. As aptly observed in *United States v Calandra* (414 US 338, 349): "Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial". A petit jury as distinct from a Grand Jury, has a defined narrowed function, to wit, the determination of facts and, in the criminal area, the concluding of the issue of the guilt or innocence of a defendant. *Taylor v Louisiana* (419 US 522) and *United States v Wood* (299 US 123), clearly demonstrate that the composition of a petit jury must be representative of a cross section of the community. However, public employees may serve on a petit jury in this State and there is no Sixth Amendment violation of an impartial jury trial therefore emanating from section 598 of the Judiciary Law.

Study of the legislative background of section 598 of the Judiciary Law discloses that the paragraph under attack herein was "recommended by the Grand Jury Association of New York County, on the ground that, although it is the practice not to place such persons on grand juries, specific provision to that effect should be included in the law because of the quasi-judicial, quasi-prosecutioning character of the grand juries *when investigating official corruption"* (Sixth Annual Report of NY Judicial Council, 1940, p 208; emphasis supplied). This brief legislative history viewed in conjunction with the functions of a Grand Jury as set forth above, warrants the conclusion that the classification embodied in the subject paragraph has a rational basis. It is well recognized that a statute is presumed valid and constitutional and the one challenging the statute has the burden of demonstrating the contrary beyond a reasonable doubt (see McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd b). Consequently, appellants carry the heavy burden of showing the statute insofar as they object to it to be wholly without rational basis.

It is patent that the paragraph at issue is subject to a "rational basis" test and not a "strict scrutiny" test. The rationale delineated in *United States v Calandra (supra)* lends inferential support to this view. Indeed, in *United States v Wood (supra)* a defendant who was convicted of petit larceny, attacked a congressional statute which had removed the exemption of certain public service employees, thereby permitting members of this classification to sit as members of the petit jury. The intermediate Federal appellate court held that the statute violated the defendant's Sixth Amendment right to trial by an impartial jury. The United States Supreme Court granted certiorari and Chief Justice HUGHES writing for the majority observed, relevant to the issue of presumed bias on the part of public employees because of the nature of their employment, that such bias "rests on an assumption without any *rational foundation" (United States v Wood, supra,* p 149; emphasis supplied). The fact that public service employees may serve on petit juries and in certain instances on Grand Juries in this State, negates any suggestion that section 598 of the Judiciary Law rests on an assumption of bias inhering in public service employees merely by nature of their employment.

It is also noted that in *Matter of Alessi v Nadjari* (47 AD2d 189), we were concerned with a claim that the exclusion of women from the pool of jurors, that is, from both petit jury and Grand Jury service, under *Taylor v Louisiana* (419 US 522, *supra)* mandated quashing a subpoena on the ground that the Grand Jury was unconstitutionally impanelled. We held that there was no practical difference to the claim that *Taylor* applied to a petit jury in view of the nature of the defect in the impaneling process. Here, however, public employees, we reiterate, are not excluded from service on a petit jury and, therefore, a practical distinction is present.

Accordingly, in light of the presumption of constitutionality and the grave burden placed on those who would overturn the statute, which burden has not been carried, and cognizant that the Criminal Procedure Law specifically mentions misconduct in public office for Grand Jury action, and viewing the classification embraced in section 598 of the Judiciary Law as having a rational basis, we conclude that said statute is constitutional.

In addition, defendants challenge the indicting Grand Jury on the ground that at and prior to the time of such jury's

selection, it was the custom and practice in Bronx County to systematically and intentionally mail qualification notices to prospective jurors, based upon a fixed mathematical formula which specifically discriminated against women in that a substantially greater number of such qualification notices were sent to men than to women, with the result that substantially more men than women were qualified for service. Section 13 of the Civil Rights Law states in pertinent part: "No citizen of the state possessing all other qualifications which are or may be required or prescribed by law, shall be disqualified to serve as a grand or petit juror in any court of this state on account of race, creed, color, national origin or *sex*" (emphasis supplied). Thus, since 1937, New York has statutorily barred sex discrimination in jury selection. On defendants' original motion to dismiss the indictment, Trial Term in respect of this issue, declared: "Parenthetically, counsel in a supplementary affirmation citing the court's action in *People v Attica Bros.* (79 Misc 2d 492) makes so tenuous and unsubstantiated an allusion to the exclusion of women from juries in Bronx County that it is doubtful if he intended it, based upon hearsay as it is, to be at issue in the instant matter. From the court's personal involvement and knowledge of the selection of Grand Juries in Bronx County, we find this contention not to be the fact" *(People v Echavarry,* 79 Misc 2d 509, 511). On defendants' subsequent motion to reargue, Trial Term again rebuffed their challenge based on the practice in Bronx County set forth above, focusing its attention not on the issue raised by such practice, but on the statutory exemption of women which formerly obtained pursuant to section 599 of the Judiciary Law.[10] On the reargument, defense counsel declared that he was authorized by the County Clerk of Bronx County to represent that at and prior to the time of the selection and constitution of the Grand Jury which indicted defendants, the practice complained of by defendants was engaged in "systematically and intentionally" and that the essential facts were verified by the People. A hearing was requested, if necessary, pursuant to CPL 210.45 (subd 6) or in the interest of justice. The People in opposition "stipulated"

10. L 1975, ch 4, § 3, eff Feb. 5, 1975 repealed subdivision 7 of section 599 of the Judiciary Law which permitted a woman to claim exemption. The existence of such claim to exemption may well have been the basis for the alleged discriminatory practice complained of by defendants herein in an endeavor to secure an adequate jury pool. Since such issue is not directly relevant for purposes of disposition herein, we do not treat of same.

that the Bronx County Clerk engaged in the same administrative practice at the time of the defendants' indictments as that followed in New York County at the time of the *Feinstein* indictment *(People v Feinstein* involved a similar indictment, ultimately dismissed, against the president of the union of which defendants are members). However, the People contended that although the practice was engaged in, it did not constitute illegal "systematic exclusion" and "discrimination" so as to compel the conclusion that the indicting Grand Jury was "illegally constituted". Patently, defendants made a sufficient showing to warrant a hearing on this issue.

In *Taylor v Louisiana* (419 US 522, *supra)* the United States Supreme Court viewed the selection of a petit jury from a representative cross section of the community to be an essential component of the Sixth Amendment right to a jury trial in a criminal case.[11] The systematic exclusion of women from jury panels was urged as having a rational basis. Nevertheless, depriving a defendant of the right to a jury drawn from a fair cross section of the community by the prospect of systematically excluding women as a class, "cannot be overcome on merely rational grounds. There must be weightier reasons if a distinctive class representing 53% of the eligible jurors is for all practical purposes to be excluded from jury service * * * [I]t may be burdensome to sort out those who should not be exempted from those who should serve. But that task is performed in the case of men, and the administrative convenience in dealing with women as a class is insufficient justification for diluting the quality of community judgment represented by the jury in criminal trials" *(Taylor v Louisiana, supra,* pp 534-535). What we are here concerned with is not statutory or constitutional provisions of New York State *excluding* women from jury service, but with an alleged administrative practice whereby a fixed percentage of women was effectively excluded from such service.[12] The claim urged by

---

11. Prior to trial on a criminal charge of kidnapping, the defendant sought to quash the petit jury venire from which his jury would be selected. Of the persons eligible for jury service, 53% were female, but no more than 10% of the persons on the jury wheel were women. The discrepancy between females eligible for jury service and those actually included in the venire resulted from the operation of Louisiana constitutional and statutory provisions (later repealed) which excluded a woman from jury service selection unless she had previously filed a written declaration of her desire to be subject to jury service.

12. It has been noted that "when we enter the realm of 'strict judicial scrutiny,' there can be no doubt that 'administrative convenience' is not a shibboleth, the mere
*(n. contd.)*

defendants as to the discriminatory practice engaged in by the County Clerk, was timely raised, relates to the systematic *exclusion* of women from jury service at the time of the indictments and partakes of the requisite constitutional dimension to warrant a full hearing.[13]

Trial Term sentenced each defendant on the class A misdemeanor to a $1,000 fine, plus three years' probation, the only term of which enumerated at sentencing was that each defendant be barred from taking any civil service promotional examination or accepting any such promotion during the probationary period. Later that day, the court signed an order for each defendant which bears the legend "Conditions of Probation 410.10 CPL—65.10 PL" and incorporates the oral conditions of probation set forth above and additional probationary conditions which may aptly be described as standard. Defendants claim that the sentences are invalid in that a written copy of the conditions was not presented *at the time* sentence was imposed (CPL 410.10). CPL 410.10 (subd 1) provides in pertinent part that "[w]hen the court pronounces a sentence of probation * * * it *must* specify *as part of the sentence* the conditions to be complied with. Where the sentence is one of probation, the defendant *must* be given a written copy of the conditions *at the time* sentence is imposed" (emphasis supplied). It is clear that the conditions are part of the sentence and must be in writing. Failure to abide by this statutory mandate may not be excused by characterizing the error as "technical". On this basis alone defendants are entitled to have this matter remanded for resentencing. In light of this conclusion, the court does not consider defendants' remaining contention that the sentences imposed are excessive.

However, as noted above, defendants are entitled to a

recitation of which dictates constitutionality" *(Frontiero v Richardson,* 411 US 677, 690).

13. It appears that the opposition by the People was primarily concerned with disputing the legal conclusions to be drawn from the existence of such discriminatory practice. A full factual delineation of such discriminatory practice is not presented by this record. It appears to be acknowledged that such discriminatory practice has been discontinued. In *United Stated v Zirpolo* (450 F2d 424, 428-429) a note of caution is sounded: "Whether the exclusion be total, as in *Ballard v [United States,* 329 US 187, 195], or only partial, as here, in denying representation to a substantial percentage of women, the ultimate objective of achieving a true cross-section of the community is ill-served. Any deliberate interference—irrespective of purpose—with a random jury selection from a list of all qualified citizens cripples the cross-section ideal".

hearing on the issue of whether the Grand Jury which indicted them was impaneled as a consequence of an administrative selection procedure or practice whereby males were favored over females systematically and intentionally to a degree that the defendants were deprived of their Sixth and Fourteenth Amendment rights to a jury drawn from a fair cross section of the community. Accordingly, this matter should be remanded to the trial court for such hearing. Final determination of this appeal of necessity must be held in abeyance pending the result of such hearing.

KUPFERMAN, J. (concurring in part and dissenting in part). While I agree that a plea of guilty can constitute a waiver of fundamental constitutional rights (see *Tollett v Henderson,* 411 US 258, *but see Menna v New York,* 423 US 61 *[Per Curiam]*), it is clear that in these matters there was no intentional waiver. *(People v Chirieleison,* 3 NY2d 170.) In the present situation, it was made perfectly clear that the guilty plea was being taken subject to the right of appeal on several constitutional and statutory points.

With respect to the issues raised, it would seem that there is no rational basis (see *United States v Wood,* 299 US 123), for the legislation (Judiciary Law, § 598) which specifically excludes from service on a Grand Jury *all* public employees *receiving over* $1,000 annual compensation. The effect of this legislation is to exclude from Grand Jury service, among many others, for example, a part time janitor earning $1,100. Inasmuch as foreclosing jury service by a significant segment of the population *(Taylor v Louisiana,* 419 US 522), renders their action a nullity, we are constrained to reverse and dismiss the indictment.

If we were to reach the point of considering the sentences imposed, they are clearly not excessive, and there was no abuse of discretion with respect to them.

Judgments of conviction affirmed in opinion by BIRNS, J.; MARKEWICH, J. P., and CAPOZZOLI, J., in a separate partially concurring and partially dissenting opinion, concur with BIRNS, J., as to affirmance, as to constitutionality of section 598 of Judiciary Law and as to absence of a sufficient record to present for appellate review question of existence of a constitutionally discriminatory practice excluding women from service on Grand Juries, but dissent insofar as to hold that defendants-appellants' pleas of guilty constitute a waiver

of any prior infirmities in the procedures theretofore had; LUPIANO, J., in a separate partially concurring and partially dissenting opinion, concurs with BIRNS, J., that defendants-appellants by their pleas of guilty did not waive consitutional challenge to indicting Grand Jury and as to constitutionality of section 598 of Judiciary Law, but dissents in part, holding that the question of existence of discriminatory practices excluding women from Grand Juries should be remanded for hearing, and also that there should be remand of defendants-appellants for resentence in respect of conditions of probation; KUPFERMAN, J., in a separate partially concurring and partially dissenting opinion, concurs with BIRNS, J., that defendants-appellants' pleas of guilty did not constitute a waiver of prior infirmities, but dissents to hold section 598 of Judiciary Law unconstitutional, requiring reversal of convictions and dismissal of indictments.

Three judgments, Supreme Court, Bronx County, each rendered February 27, 1976, affirmed.